Charles Gerstein (*pro hac vice* application forthcoming)
(DC Bar No. 1033346)
Olevia Boykin (*pro hac vice* application forthcoming)
(TX Bar No. No. 24105518)
Tara Mikkilineni (*pro hac vice* application forthcoming)
(DC Bar No. 997284)
Civil Rights Corps
1601 Connecticut Ave
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809

Jesse Merrithew, OSB No. 074564
jesse@lmhlegal.com
Viktoria Safarian, OSB No. 175487
viktoria@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street Suite 415
Portland Oregon 97205
(971) 229-1241

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | | |
|---|---|---|
| VERNON LEE RASMUSSEN | ) | CASE NO.     3:20-cv-865-IM |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM** |
| | ) | **OF LAW IN SUPPORT OF** |
| | ) | **PETITION FOR WRIT OF** |
| v. | ) | **HABEAS CORPUS** |
| | ) | **EXPEDITED CONSIDERATION** |
| Sheriff PAT GARRETT, | ) | **REQUESTED** |
| Washington County Sheriff, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................III

I.     INTRODUCTION ....................................................................................................1

II.    BACKGROUND—BAIL IS A MECHANISM OF PRETRIAL RELEASE, NOT
       PRETRIAL DETENTION.........................................................................................3

III.   FACTS ......................................................................................................................7

IV.    STANDARD OF REVIEW......................................................................................10

V.     ARGUMENT ..........................................................................................................11

       a.    Jailing Mr. Rasmussen For Inability to Make a Monetary Payment that the
             State Concedes He Cannot Make Violates the Equal Protection and Due
             Process Clauses.........................................................................................12

       b.    Jailing Mr. Rasmussen Pretrial Without a Robust Hearing on, and Specific
             Findings Concerning, his Dangerousness or Risk of Flight Simply Because
             He Cannot Pay Secured Money Bail Violates the Due Process Clause ..........14

VI.    CONCLUSION .......................................................................................................28

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Addington v. Texas*, 441 U.S. 418 (1979) ........................................................21, 22, 24

*Aime v. Com*, 414 Mass 667, 611 NE2d 204 (1993)...................................................24

*Atkins v. Michigan*, 644 F.2d 543 (6th Cir. 1981) ....................................................10

*Bandy v. United States*, 81 S. Ct. 197 (1960) ..........................................................12

*Bearden v. Georgia,* 461 U.S. 660 (1983) ..............................................2, 12, 13, 19

*Brangan v. Commonwealth*, 80 N.E.3d 949 (Mass. 2017) .........................................3

*Brill v. Gurich*, 1998 OK CR 49, 965 P2d 404 (Okla. Crim. App. 1998) ...............24

*Caliste v. Cantrell*, 329 F Supp 3d 296  (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019)24

*Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602 (1993) ...................21

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990)............................22

*Douglas v. California*, 372 U.S. 353 (1963).................................................................11

*Foucha v. Louisiana*, 504 U.S. 71 (1992) ...........................................................13, 23

*Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)................................................................21

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973).................................................................20

*Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1 (1st Cir. 2004), *judgment vacated on*

    *other grounds*, 544 U.S. 918 (2005) .................................................................10

*Griffin v. Illinois*, 351 U.S. 12 (1956)......................................................................11

*In re Humphrey*, 19 Cal. App. 5th 1006 (Ct. App. 2018), *review granted* 417 P.3d 769 (Cal.

    2018) ..............................................................................................................3, 24

*Kleinbart v. United States*, 604 A2d 861 (DC 1992).................................................25

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)...............................................18

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) (*en banc*)..........................14, 16, 23

*Lora v. Shanahan*, 804 F.3d 601 (2d Cir 2015) ...............................................................25

*Lynch v. United States*, 557 A.2d 580 (DC 1989) (en banc) ....................................24

*Martinez v. Caldwell*, 644 F.3d 238 (5th Cir. 2011)...................................................10

*Mathews v. Eldridge*, 424 U.S. 319 (1976)....................................................14, 16, 18

*Mayer v. City of Chicago*, 404 U.S. 189 (1971) .........................................................11

*Mendonza v. Com*, 423 Mass 771, 673 NE 2d 22 (1996) .........................................24

*Morrissey v. Brewer*, 408 U.S. 471 (1972)..................................................................21

*ODonnell v. Harris County*, 251 F.Supp.3d 1052 (S.D. Tex. 2017), *aff'd in relevant part* 892

    F.3d 147 (5th Cir. 2018) ........................................................................... passim

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018).................................2, 13

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ...................................................................25

*Phillips v. Court of Common Pleas, Hamilton County*, *Ohio*, 668 F.3d 804 (6th Cir. 2012)...10

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978).................................................2, 12

*Santosky v. Kramer*, 455 U.S. 745 (1982) ............................................................22, 24

*Simpson v. Miller*, 387 P.3d 1270 (Ariz. 2017) .........................................................16

*Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) .........................................................25

*State v. Brown*, 338 P.3d 1276 (N.M. 2014).......................................................3, 14, 17

*State v. Butler*, No. 2011-K-0879, 2011 WL 12678268 (La. App. 4th Cir. July 28, 2011) .....24

*State v. Ingram*, 230 N.J. 190, 165 A.3d 797 (NJ 2017).........................................24

*Stow v. Murashige*, 389 F.3d 880 (9th Cir. 2004).....................................................10

*Strickland v. Washington*, 466 US 668(1984) ..........................................................25

*Swarthout v. Cooke*, 562 U.S. 216 (2011) ...............................................................18

*Tate v. Short*, 401 U.S. 395 (1971) ...................................................................................11

*United States v. Leathers*, 412 F.2d 169 (D.C. Cir. 1969).................................................14, 17

*United States v. Mantecon-Zayas*, 949 F.2d 548 (1st Cir. 1991)....................................2, 14, 17

*United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988) ......................................................17

*United States v. Montalvo-Murillo*, 495 U.S. 711 (1990)..........................................................13

*United States v. Payan*, 992 F.2d 1387 (5th Cir. 1993) ............................................................19

*United States v. Salerno*, 481 U.S. 739 (1987) .................................................................. passim

*United States v. Teague*, 953 F2d 1525 (11th Cir 1992) .........................................................25

*Valdez-Jimenez v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 136 Nev. Adv. Op. 20, 460

    P.3d 976 (2020)............................................................................................................. passim

*Walck v. Edmondson*, 472 F.3d 1227 (10th Cir. 2007)...........................................................10

*Ward v. Village of Monroeville*, 409 U.S. 57 (1972).............................................................21

*Wheeler v. State*, 160 Md. App. 566, A.2d 1058 (2005) .......................................................24

*White v. Lambert*, 370 F.3d 1002 (9th Cir. 2004)..................................................................10

*Williams v. Illinois*, 399 U.S. 235 (1970) ..........................................................................5, 11

*Wolff v. McDonnell*, 418 U.S. 539 (1974) .............................................................................21

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ...............................................................................13

## **Statutes**

18 U.S.C. § 3142(c)(2)...............................................................................................................6

18 U.S.C. §§ 3141–3150 ............................................................................................................6

28 U.S.C. § 2241 .....................................................................................................................10

28 U.S.C. § 2254 .....................................................................................................................10

The Bail Reform Act of 1966, 80 STAT. 214 (repealed 1984)...................................................6

## Other Authorities

Aug. 4, 1964, Testimony on Bail Legislation before the Senate Judiciary Committee..............6

Brief for Amicus Curiae CATO Institute, *Walker v. City of Calhoun, Ga.*, No. 16-10521, at 3

    (11th Cir. 2016).....................................................................................................4

Brief of Conference of Chief Justices as *Amicus Curiae* at 38, *ODonnell v. Harris Cnty.*, No. 17-

    20333, 2017 WL 3536467 (5th Cir. Aug. 9, 2017)............................................25

Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. PA. L. REV. 959 (1965).......5

DANIEL J. FREED & PATRICIA M. WALD, BAIL IN THE UNITED STATES: 1964 1 (1964)..............4

June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in*

    *the Administration of Bail*, 34 SYRACUSE L. REV. 517, 523–26 (1983) ................................4

Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 ARIZ. L. REV.

    909, 916 (2013)....................................................................................................5

Note, *Bail: An Ancient Practice Reexamined*, 70 YALE L.J. 966, 966 (1961) ..........................4

Timothy R. Schnacke, U.S. Department of Justice—National Institute for Corrections,

    *Fundamentals of Bail: A Resource Guide for Pretrial Practitioners and a Framework for*

    *American Pretrial Reform* 1 (August 2014) ........................................................3

## Constitutional Provisions

Article I, Section Nine of the United States Constitution........................................................10

Ore. Const. Art. I, Section 43.....................................................................................................7

Petitioner Vernon Lee Rasmussen is in a Washington County jail cell. He has not been convicted of a crime, and no court has found that releasing him would pose an unreasonable risk of flight or danger to the community. Mr. Rasmussen is in jail because he is poor and the Washington County Circuit Court required a financial condition of release that he cannot afford. An unaffordable condition of pretrial release is an order of pretrial detention. The State of Oregon has not complied with the substantive and procedural requirements for entering an order of pretrial detention. Mr. Rasmussen is therefore being jailed in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

Mr. Rasmussen respectfully petitions for a conditional writ of habeas corpus ordering his release unless the Washington County Court conducts a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether Mr. Rasmussen is a danger to the community and, if so, whether conditions of release exist that could reasonably ensure his presence at trial and the safety of the community.

## I.     INTRODUCTION

There are two principal constitutional problems with detaining a person prior to trial simply because he cannot make a monetary payment: (1) jailing someone solely because he cannot pay a sum of money without making a finding that he is able to pay it infringes a fundamental right solely on the basis of wealth in violation of the Equal Protection and Due Process Clauses; and (2) jailing someone on an unattainable financial condition violates the Constitution because it deprives a presumptively innocent person of the fundamental right to liberty without complying with the substantive and procedural requirements for a valid order of detention under the Due Process Clause. If the state jails someone for failing to pay a sum of money, it must either make a

procedurally proper finding that the person is able to pay the sum and is willfully refusing to, or that jailing the person outright would be permissible under the Due Process Clause because no alternatives exist to meet compelling government interests. The state did neither here.

The state may not jail someone simply because he has not paid a sum of money unless a court makes a finding that he is able to pay it. In *Bearden v. Georgia,* 461 U.S. 660, 672–73 (1983), the Supreme Court explained that to "deprive [a convicted defendant] of his conditional freedom simply because, through no fault of his own he cannot pay [a] fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment." The principles that forbid jailing a *convicted* defendant because he is unable to make a payment apply with even greater force to an arrestee who is presumed innocent. *See ODonnell v. Harris County*, 892 F.3d 147, 161 (5th Cir. 2018) ("[P]retrial imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." (internal quotation marks and citations omitted)); *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (affirming the unconstitutionality of the use of secured money bail without inquiry into ability to pay because it invidiously discriminates against the poor).

In this case, the money-bail amount was ultimately chosen despite the State's concession that Mr. Rasmussen could not afford to pay it. If the state requires a money-bail amount that a person cannot afford to pay, it has entered the functional equivalent of an order of pretrial detention. An order of pretrial detention must meet exacting procedural and substantive Constitutional restrictions. *Compare United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991) ("[O]nce a court finds itself in this situation—insisting on terms in a 'release' order that will cause the defendant to be detained pending trial—it must satisfy the procedural requirements for a valid *detention* order" (emphasis in original)), *with United States v. Salerno*, 481 U.S. 739 (1987)

(describing procedural requirements for a valid detention order, including: a hearing with counsel, legal standards requiring proof of dangerousness by clear and convincing evidence, opportunity to present evidence, consideration of less restrictive alternative conditions, and reviewable findings). Federal constitutional law allows the state to jail someone pretrial only if, after robust procedures, a court finds that the detainee poses a severe risk to the public or severe risk of flight. "[W]hen bail is set in an amount that results in continued detention, it functions as a detention order, and accordingly is subject to the same due process requirements applicable to a deprivation of liberty." *Valdez-Jimenez v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 136 Nev. Adv. Op. 20, 460 P.3d 976, 987 (2020). Indeed, "[i]ntentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether." *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014); *see also In re Humphrey*, 19 Cal. App. 5th 1006, 1029 (Ct. App. 2018), *review granted* 417 P.3d 769 (Cal. 2018); *Brangan v. Commonwealth*, 80 N.E.3d 949, 961 (Mass. 2017).

In this case, the state court not only imposed a money-bail amount that exceeds Rasmussen's means, it imposed that amount in the face of the State's concession that Mr. Rasmussen could not pay it. The only possible purpose was to detain Mr. Rasmussen, and as a result he has been detained for more than three months. This is so even though no court found that Mr. Rasmussen poses a danger to the community or a risk of flight. The state's detention of Mr. Rasmussen because he cannot pay a sum of money violates the United States Constitution.

## I.    BACKGROUND—BAIL IS A MECHANISM OF PRETRIAL RELEASE, NOT PRETRIAL DETENTION

"Bail" is not equivalent to "money bail." "Bail" means *release* before trial. Although common in recent years, the sentence "the Defendant is held on $10,000 bail" is a contradiction: as a historical matter, being "held on bail" was impossible. Timothy R. Schnacke, U.S. Department of Justice—National Institute for Corrections, *Fundamentals of Bail: A Resource Guide for*

*Pretrial Practitioners and a Framework for American Pretrial Reform* 1 (August 2014).[1] As the CATO institute has explained, since well before the Magna Carta, bail has been understood as a device to *free* defendants pretrial. *See* Brief for Amicus Curiae CATO Institute, *Walker v. City of Calhoun, Ga.*, No. 16-10521, at 3 (11th Cir. 2016).[2]

"Money bail" is the practice of requiring defendants to forfeit money if they do not appear for trial. Money bail can be either secured or unsecured. A secured money-bail system requires defendants to deposit money before they are released; an unsecured money-bail system allows defendants to be released without depositing any money so long as they promise to pay if they fail to appear.

As Chief Judge Rosenthal of the United States District Court for the Southern District of Texas recently summarized in her comprehensive discussion of the history of the American bail system, *ODonnell v. Harris County*, 251 F.Supp.3d 1052, 1068 (S.D. Tex. 2017), *aff'd in relevant part* 892 F.3d 147 (5th Cir. 2018), bail originated in medieval England "as a device to free untried prisoners." DANIEL J. FREED & PATRICIA M. WALD, BAIL IN THE UNITED STATES: 1964 1 (1964). The Statute of Westminster, enacted by the English Parliament in 1275, listed the offenses that would be bailable and provided criteria for determining whether someone should be released. These criteria included the strength of the evidence against the accused and the severity of the accused's criminal history. *See* June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 SYRACUSE L. REV. 517, 523–26 (1983); Note, *Bail: An Ancient Practice Reexamined*, 70 YALE L.J. 966, 966 (1961). In 1679, Parliament adopted the Habeas Corpus Act to ensure that an accused could obtain a timely bail

---

[1] *Available at* https://nicic.gov/fundamentals-bail-resource-guide-pretrial-practitioners-and-framework-american-pretrial-reform.

[2] *Available at* https://object.cato.org/sites/cato.org/files/pubs/pdf/walker-v-city-of-calhoun.pdf.

hearing. And the English Bill of Rights, which was enacted in 1679, prohibited excessive bail. *See* Carbone, *supra*, at 528.

The American States continued this tradition. Beginning with the Pennsylvania Constitution of 1682, 48 states, including Oregon, have protected, by constitution or statute, a right to bail "by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 916 (2013). As Judge Rosenthal explains, "[h]istorians and jurists confirm that from the medieval period until the early American republic, a bail bond was typically based on an individualized assessment of what the arrestee or his surety *could pay* to assure appearance and secure release." *ODonnell*, 251 F. Supp. 3d at 1069 (emphasis added). The court explained the English practice at the time of the ratification of the United States Constitution: "'The rule is, where the offence is prima facie great, to require good bail; moderation nevertheless is to be observed, and such bail only is to be required as the party is able to procure; for otherwise the allowance of bail would be a mere colour for imprisoning the party on the charge.'" *Id.* at 1070 (quoting 1 J. Chitty, A Practical Treatise on the Criminal Law 88–89 (Philadelphia ed. 1819)).

Jurisdictions across America began to depart from the original understanding of bail in the middle of the 20th Century. And the routine use of unaffordable secured money bail without regard to ability to pay resulted in a "crisis." *See United States v. Salerno*, 481 U.S. 739, 742 (1987) (describing "a bail crisis in the federal courts"); Caleb Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U. Pa. L. Rev. 959, 960 (1965). Two distinct evils of the secured-money-bail system provoked the crisis: It imperiled public safety by allowing potentially dangerous defendants to be released without any consideration of their dangerousness, and it worked an "invidious

discrimination" against those who could not pay. *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 242 (1970).

Responding to this crisis, Attorney General Robert Kennedy led a successful movement to reform bail in the federal courts. Over 50 years ago, Kennedy testified that

> [B]ail has become a vehicle for systematic injustice. Every year in this country, thousands of persons are kept in jail for weeks and even months following arrest. They are not yet proven guilty. They may be no more likely to flee than you or I. But, nonetheless, most of them must stay in jail because, to be blunt, they cannot afford to pay for their freedom . . . . Plainly our bail system has changed what is a constitutional right into an expensive privilege.

Robert F. Kennedy, Aug. 4, 1964, Testimony on Bail Legislation before the Senate Judiciary Committee (emphasis in original).[3]

One of the results of the movement to reform the bail system in the 1960's was the virtual elimination of cash bonds in the District of Columbia and in all Federal courts. The Bail Reform Act "assure[d] that all persons, regardless of their financial status, [would] not needlessly be detained pending their appearance to answer charges . . . when detention serves neither the ends of justice nor the public interest." The Bail Reform Act of 1966, 80 STAT. 214 (repealed 1984). In 1984, Congress updated the Bail Reform Act as part of the Comprehensive Crime Control Act. *See* 18 U.S.C. §§ 3141–3150. Federal courts and the courts of the District of Columbia transitioned to a rigorous, evidence-based system of non-financial conditions that remains in place today. If the government believes that a defendant cannot be released pre-trial because he is too dangerous or too likely to flee, the government may seek an order of detention, but only after it has satisfied the court, at a "full-blown adversary hearing," that no condition or combination of conditions could assure the defendant's appearance at trial and the safety of the community. *Salerno*, 481 U.S. at

---

[3]*Available at* http://www.justice.gov/sites/default/files/ag/legacy/2011/01/20/08-04-1964.pdf

750. The government may not detain someone merely because she does not have enough money, nor may the government use money to detain *sub rosa* people it believes to be dangerous. 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person."). Although federal courts may detain defendants pending trial, they may not do so without rigorous process. "The federal history of bail reform confirms that bail is a mechanism of pretrial release, not of preventive detention." *ODonnell*, 251 F. Supp. 3d at 1074.

The history of bail reform in Oregon is consonant with the evolution in the federal system. In 1973, the legislature adopted a comprehensive system of pretrial release. In 2008, the voters of Oregon amended the Oregon Constitution to add a provision under whose plain terms the State may detain a person prior to trial if the person is charged with a "violent felony" and if the State proves by clear and convincing evidence that the person entitled to release poses a danger to the public. *See* Ore. Const. Art. I, Section 43. In other words, the Oregon Constitution specifically gives defendants the robust procedural rights at a release hearing that the Due Process Clause requires and that the U.S. Supreme Court upheld in *Salerno.*

## II.    FACTS

Vernon Lee Rasmussen is 50 years old. Prior to being incarcerated, Mr. Rasmussen worked at Orchic Orthopedics, making $2,200 per month. App'x at 15. Because he was jailed in this case he lost his job and became unemployed. Since being jailed, he has no income. *Id.* at 71. His only asset is a car that he shares with his wife, valued at approximately $1,500. *Id.* at 15, 17. He has lived in Oregon since 1995, most recently with his wife at an apartment in West Linn for over five years. *Id.* at 15, 17. He and his wife have a newborn baby, and his brother lives in Forest Grove. *Id.* at 71, 15. Mr. Rasmussen's criminal history is limited to drug and minor property offenses, most recently two property misdemeanors a decade ago. App'x at 15. The current criminal allegations are alleged to have occurred between 22 and 15 years ago. He has had no contact with

or knowledge about the alleged victim's whereabouts since then, aside from a chance encounter at his workplace on one occasion. App'x at 14-15. Mr. Rasmussen has been a law-abiding citizen for a decade, and his history of minor property and drug convictions is not probative of a danger to the public. App'x at 15.

Mr. Rasmussen was indicted on February 25, 2020, for eight counts related to sexual abuse of a minor. App'x at 1. That day, a money-bail amount calculated solely by reference to the charges against Mr. Rasmussen was pre-printed on the indictment filed against him. App'x at 3. By the terms of the indictment, Mr. Rasmussen was ordered to pay "$2,000,000.00 (or release agreement plus 10 percent of security amount)." *Id*. A warrant for his arrest issued that same day, and he was arrested shortly thereafter, on February 27, 2020. *Id*. On February 28, 2020, the court formally demanded $2,000,000 for Mr. Rasmussen's release. App'x at 4. Unable to pay the cost of his release, which was ten percent of $2,000,000, Mr. Rasmussen remained in jail.

On March 11, 2020, Mr. Rasmussen filed a motion to reduce the money-bail amount required for his release. App'x at 6-15. As a basis for the reduction, Mr. Rasmussen asserted that he had no significant assets, no income, and could post no money. App'x at 15; App'x at 71. He stated that even though he worked before and had an income, he lost his job due to his pretrial detention. App'x at 15. He requested to be released under any release conditions the court found necessary to reasonably ensure community safety and court appearance. App'x at 12. He stated that his wife, with whom he had a newborn child, would be willing to be a responsible party for his release. App'x at 15; App'x at 71. He argued that ensuring his detention through an unattainable financial condition of release violated his rights under the U.S. Constitution and Oregon law. App'x at 6-12.

Mr. Rasmussen also requested to be released in light of the COVID-19 pandemic. *See*

App'x at 16-54. Mr. Rasmussen is fifty years old. He argued that his age places him at an elevated

risk of serious illness if he contracts the disease. App'x at 69. He argued it is virtually impossible

for the jail to protect him from the virus, and that should he contract it he is likely to die. App'x at

17; App'x at 19-20; App'x at 27-31; App'x at 48; App'x at 54.

At his release hearing on March 18, 2020, the state objected to release. The State recounted

the charges and stated without detail that Mr. Rasmussen had a "lengthy criminal history" and

"multiple FTAs." The state asked the court to deny release due to flight risk and addressed the

money-bail amount in a single sentence: "As far as the amount of security, I think the amount of

security is appropriate given the seriousness of the charges." App'x at 74. The state presented no

witnesses and no documentary evidence. App'x at 72-74. And the State did not contest that Mr.

Rasmussen was unable to pay the security amount required for his release.

Mr. Rasmussen pointed out in his rebuttal argument to the court that if the state is asking

that Mr. Rasmussen should be held pretrial, then the state must meet its burden under Oregon and

federal law to prove "by clear and convincing evidence that it is inappropriate to release him." Mr.

Rasmussen pointed out that keeping security at an unattainable amount is equivalent to an

unconstitutional detention order. App'x at 76.

The Circuit Court for Washington County reduced the security amount from $2,000,000 to

$250,000, an amount still far beyond Mr. Rasmussen's means. App'x at 55. In so doing, the court

found Mr. Rasmussen does not fall into a high-risk category for COVID-19. App'x at 77-78. The

court also ordered additional conditions in case Mr. Rasmussen somehow manages to pay the

security amount required for his release even though the money required for release makes going

home impossible for Mr. Rasmussen.

The court did not state why the non-financial release conditions standing alone were not

sufficient to meet the state's interests in reasonably ensuring court appearance or community safety. Nor did the court address Mr. Rasmussen's arguments that Oregon law and the U.S. Constitution forbid jailing someone solely because he cannot make a monetary payment, without findings based on clear and convincing evidence that release would pose an immitigable risk of either flight or community safety.

On April 13, 2020, Mr. Rasmussen petitioned the Oregon Supreme Court for a writ of habeas corpus or mandamus, arguing that it violated both Oregon and federal law to jail him solely because he could not afford his bond. App'x at 64-122. The Oregon Supreme Court summarily denied the petition on May 21, 2020. App'x at 63.

Unable to buy his freedom for $25,000, Rasmussen remains in jail.

## III. STANDARD OF REVIEW

Petitioner brings this action under 28 U.S.C. § 2241 and Article I, Section Nine of the United States Constitution. Petitioner, therefore, need not satisfy the heightened requirements of § 2254. Because he has not been convicted of a crime and is not in custody "pursuant to the judgment of a state court," Petitioner may bring this action under § 2241 and need not bring this action under § 2254, which governs habeas petitions challenging state criminal convictions. *Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004) ("'[T]he general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment—for example, a defendant in pre-trial detention . . . .'" (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004)). Section 2254's heightened standards of review, therefore, do not apply to this case. *Id.* at 888; *Phillips v. Court of Common Pleas, Hamilton County, Ohio*, 668 F.3d 804, 809 (6th Cir. 2012) ("We have long recognized that pretrial detainees pursue habeas relief . . . under § 2241."); *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st

Cir. 2004), *judgment vacated on other grounds*, 544 U.S. 918 (2005); *Atkins v. Michigan*, 644 F.2d 543, 546 & n.1 (6th Cir. 1981). This Court, accordingly, reviews the legal determinations of the state courts, and the constitutional adequacy of the procedures used to make them, de novo. *Stow*, 389 F.3d at 888 ("The significance of th[e] determination [that § 2241 applies] is that . . . we can affirm the district court's [grant of habeas relief] . . . de novo . . . .").

## IV.   ARGUMENT

Mr. Rasmussen's objection to his detention in the Washington County jail is twofold: (1) He is in jail because he cannot pay a secured money-bail amount that was imposed without the required procedural protections (neither the State nor the courts disputed Mr. Rasmussen's inability to pay); and (2) He is in jail because the state circuit court entered the functional equivalent of an order of detention and no court has made a procedurally valid finding (indeed, no court has made any explicit finding) that he is dangerous or that he poses a flight risk.

Mr. Rasmussen's substantive objections to his detention—that detaining him pretrial is not narrowly tailored to forward a compelling government interest—cannot be addressed until his procedural ones are. That is because neither Mr. Rasmussen nor this Court can know whether the state circuit court's order of detention complies with the substantive requirements of the Due Process Clause until the required findings are made under the correct substantive and evidentiary standards. Accordingly, Mr. Rasmussen prays for a conditional writ of habeas corpus ordering his release unless the state circuit court grants a thorough adversarial hearing that complies with the requirements for preventative detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he poses a flight risk or a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Rasmussen's presence at trial and the safety of the community.

### A.    Jailing Mr. Rasmussen For Inability to Make a Monetary Payment that He Cannot Make Violates the Equal Protection and Due Process Clauses

The principle that jailing the poor because they cannot pay a sum of money is unconstitutional has deep roots in American constitutional law. *See Williams v. Illinois*, 399 U.S. 235, 241 (1970) ("[T]he Court has had frequent occasion to reaffirm allegiance to the basic command that justice be applied equally to all persons."); *Douglas v. California*, 372 U.S. 353, 355 (1963) (condemning the "evil" of "discrimination against the indigent"); *Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has."); *see also Mayer v. City of Chicago*, 404 U.S. 189, 193 (1971).

These principles have been applied in a variety of contexts in which a government jailed people because of their inability to make monetary payments. In *Tate v. Short*, 401 U.S. 395, 398 (1971), the United States Supreme Court held that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." In *Bearden v. Georgia,* 461 U.S. 660, 672–73 (1983), the Court explained that to "deprive [a] probationer of his conditional freedom simply because, through no fault of his own he cannot pay [a] fine . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment."

For pretrial arrestees, the rights at stake are even more significant because the arrestees' liberty is not diminished by a criminal conviction; they are presumed innocent. Justice Douglas framed the basic question that applies to pre-trial detainees:

> To continue to demand a substantial bond which the defendant is unable to secure raises considerable problems for the equal administration of the law. . . . Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom?

*Bandy v. United States*, 81 S. Ct. 197, 197–98 (1960) (Douglas, J., in chambers).

The Fifth Circuit answered that question in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1977) (en banc)*. The *en banc* court held that a recently enacted Florida Rule did not on its face require Florida courts to set secured monetary bail for arrestees. But the court explained that if such a thing were to happen to an indigent person, it would be unconstitutional.

> We have no doubt that in the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restraint.

*Id*. at 1058.[4] "The incarceration of those who cannot [afford a cash payment], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Id*. at 1057.[5] In *ODonnell* the Fifth Circuit reaffirmed the core holding of *Pugh*. 892 F.3d 147. The court concluded that Harris County, Texas's money-bail system was unconstitutional, and that it worked a "basic injustice: poor arrestees in Harris County are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond." *Id.* at 162.

In this case, it is undisputed that Mr. Rasmussen is indigent and therefore cannot pay the money-bail amount in his case. But, under the cases described above, the state is permitted to detain someone for failing to pay money only if it makes a procedurally proper finding that he is

---

[4]*Rainwater* further explained that it refused to require a priority to be given in all cases—including those of the non-indigent—to non-monetary conditions of release. The court noted that, at least for wealthier people, some might actually prefer monetary bail over release with certain other conditions, and that the court would not invalidate a state Rule that allowed for those other conditions in appropriate cases. *Id*. at 1057.

[5]Four circuit judges dissented in *Rainwater*. Although they agreed with the constitutional principles announced by the majority that the Constitution forbids jailing the poor when they cannot afford monetary bail, they were concerned about the majority's faith in the Florida courts not to apply the new state Rule in unconstitutional ways to detain the indigent. *Id*. at 1067 ("I cannot escape the conclusion that the majority has chosen too frail a vessel for such a ponderous cargo of human rights.") (Simpson, J., dissenting).

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

able to pay. *E.g.*, *Bearden*, 461 U.S. at 672. Therefore, the state cannot justify Mr. Rasmussen's

detention by arguing that he is willfully refusing to pay the sum.

> **B.**   **Jailing Mr. Rasmussen Pretrial Without a Robust Hearing on, and Specific Findings Concerning, his Dangerousness or Risk of Flight Simply Because He Cannot Pay Secured Money Bail Violates the Due Process Clause**

The right to pretrial liberty is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750

(1987); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—

from government custody, detention, or other forms of physical restraint—lies at the heart of the

liberty that [the Due Process] Clause protects."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)

("Freedom from bodily restraint has always been at the core of the liberty protected by the Due

Process Clause from arbitrary governmental action."); *United States v. Montalvo-Murillo*, 495

U.S. 711, 716 (1990) (holding that release prior to trial is a "vital liberty interest").

Because "[f]reedom from bodily restraint is a fundamental liberty interest," any deprivation

of that liberty must withstand heightened constitutional scrutiny, which generally requires that the

deprivation be narrowly tailored to further a compelling government interest. *See, e.g.*, *Lopez-*

*Valenzuela v. Arpaio*, 770 F.3d 772, 780–81 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to

strike down Arizona bail law that required detention after arrest for undocumented immigrants

accused of certain offenses). For that reason, the Supreme Court in *Salerno* applied exacting

scrutiny to a presumptively innocent person's loss of pretrial liberty and required that the

government employ rigorous procedures to protect that liberty. *See Salerno*, 481 U.S. at 746

(describing "procedural due process" restrictions on pretrial detention, and citing *Mathews v.*

*Eldridge*, 424 U.S. 319, 335 (1976)).

The procedures challenged in this case violate the Due Process Clause. As courts around

the county have held, an order setting unattainable conditions of release is equivalent to an order

of detention. *Valdez-Jimenez*, 460 P.3d at 987; *Brown*, 338 P.3d at 1292; *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell*, 251 F. Supp. 3d at 1145 (holding that secured money bail set in amount that an arrestee cannot afford is constitutionally equivalent to an order of detention). It must, therefore, at least survive heightened constitutional scrutiny and, therefore, be narrowly tailored. *See Brown*, 338 P.3d at 1292 ("Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether. If a defendant should be detained pending trial . . ., then that defendant should not be permitted any bail at all. Otherwise the defendant is entitled to release on bail, and excessive bail cannot be required."). To meet that standard, a court must at least find on the record by clear and convincing evidence that the detainee presents a risk of flight or danger to the community and that no conditions or combination of conditions alternative to detention could reasonably mitigate that danger. Because no court has done that for Mr. Rasmussen, his detention violates the Due Process Clause.

> 1.   ***Salerno* and its Progeny Allow Pretrial Detention Only When it Complies with Substantive and Procedural Due Process Principles**

In *Salerno*, the United States Supreme Court considered a facial challenge to the federal Bail Reform Act. That Act permits the government to detain people found to be highly dangerous, after an individualized "full-blown adversary hearing," 481 U.S. at 750, and only where the "Government . . . convince[s] a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community . . . ." *Id.* The Supreme Court subjected the Bail Reform Act to heightened judicial scrutiny, holding that the government may detain individuals before trial only where that detention is carefully limited to serve a "compelling" government interest. *Id.* at 745.

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

*Salerno* imposed two interlocking sets of requirements on preventive detention: substantive and procedural. *Id.* at 746 ("This Court has held that the Due Process Clause protects individuals against two types of government action. So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.' When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." (internal citations omitted)). The procedural requirements are necessary to ensure that the substantive ones have been met.

Substantively, *Salerno* required that pretrial detention survive heightened constitutional scrutiny. The government may deprive a presumptively innocent person of his physical liberty only if doing so is tailored to forward a compelling interest. *Id.* at 746–48. Therefore, the government may detain someone pretrial only if other, less restrictive means are unavailable to serve the state's interests.

Procedurally, *Salerno* held that orders of detention may be entered after rigorous procedures have been met. As explained *infra*, these procedures include, but are not necessarily limited to, a "full-blown adversary hearing," *id.* at 750; a heightened evidentiary standard of proof of dangerousness by "clear and convincing evidence," *id.* at 751; consideration of alternative conditions of release, *id.* at 750; and "written findings of fact and a written statement of reasons for a decision to detain," *id.* at 752. Consistent with its reliance on procedural-due-process cases, *id.* at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)), *Salerno* insists on procedures that are sufficient to ensure that any preventive detention be consistent with *substantive* due process.

Following *Salerno*, courts across the country have made clear that pre-trial detention regimes must be consistent with both procedural and substantive due process. *See Valdez-Jimenez*, 460 P.3d at 985; *Simpson v. Miller*, 387 P.3d 1270, 1276 (Ariz. 2017) ("[I]t is clear from *Salerno* and other decisions that the constitutionality of a pretrial detention scheme turns on whether particular procedures satisfy substantive due process standards."); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (*en banc*) (applying strict scrutiny to strike down an Arizona law that required detention after arrest without individualized consideration of an arrestee's circumstances); *ODonnell*, 251 F. Supp. 3d at 1055.   In *Lopez-Valenzuela*, the Ninth Circuit considered an Arizona law categorically jailing any arrestee who was an undocumented immigrant to the United States. The court applied "strict scrutiny" to the Arizona law, relying on *Salerno*. 770 F.3d at 786. Under strict scrutiny, the court concluded, the law could not survive. "Whether a categorical denial of bail for noncapital offenses could *ever* withstand heightened scrutiny is an open question," the court noted. *Id.* at 785 (emphasis added). But the court concluded that a blanket prohibition on pretrial release for undocumented immigrants clearly could not survive heightened scrutiny. *Id.* To detain a presumptively innocent person prior to trial, the court reasoned, the state must offer convincing—and almost always individualized—rationales. *See id.* at 786.

## 2.    An Unattainable Money-Bail Amount is Equivalent to an Order of Detention

Courts across the country agree that requiring money bail in an amount that a defendant cannot afford is equivalent to ordering him detained pretrial. "Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether." *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014).   The Nevada Supreme Court recently held that "when bail is set in an amount that results in continued detention, it functions as a detention order, and accordingly is subject to the same due process requirements applicable to a deprivation of

liberty[,]" including findings by "clear and convincing evidence that no less restrictive alternative will satisfy its interests in ensuring the defendant's presence and the community's safety." *Valdez-Jimenez*, 460 P.3d at 987.

Federal courts have similarly unanimously held that monetary conditions of "release" that result in detention are equivalent to orders of detention and, therefore, must meet the exacting procedural and substantive requirements for orders of detention. *Mantecon-Zayas*, 949 F.2d at 550; *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (explaining that when no attainable conditions of release can be implemented, and the defendant must be detained pending trial, "the court must explain its reasons for concluding that the particular financial requirement is a necessary part of the conditions for release"); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("[T]he setting of bond unreachable because of its amount would be tantamount to setting no conditions at all."); *ODonnell*, 251 F. Supp. 3d at 1145 (holding that secured money bail set in an amount that an arrestee cannot afford is constitutionally equivalent to an order of detention).

The reasoning here is easy to understand. For Mr. Rasmussen—whom the state court found to be indigent—a money bail amount of $250,000 is equivalent to a money bail amount of $250,000,000: these conditions are strictly impossible from him to meet. Setting an impossible condition of release is the functional equivalent of setting no condition at all and, therefore, ordering pretrial detention.

### 3. Because No Court Has Properly Found Mr. Rasmussen to Be Dangerous or at Risk of Flight, the Order of Detention Violates the Due Process Clause

As explained above, the Due Process Clause imposes strict substantive and procedural requirements on pretrial detention. In Mr. Rasmussen's case, the state court did not make

constitutionally adequate findings on the record about his dangerousness or risk of flight.[6] Instead, the court ordered him detained by doing what Washington County courts have done for years: selecting a money-bail number that supposedly relates to a charged crime and an accused's background, but that does not consider his ability to pay at all. If this Court issues the writ requested by Mr. Rasmussen, the State will have the opportunity to seek an order of detention against Mr. Rasmussen at a constitutionally adequate hearing. But as this case stands, Mr. Rasmussen's detention does not comply with the procedural requirements of the Due Process Clause.

Procedural-due-process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Here, Mr. Rasmussen has been deprived of two substantive liberty interests: the right against wealth-based detention and the "fundamental" "interest in [pretrial] liberty." *Salerno*, 481 US at 750. These rights were deprived when the trial court imposed an unaffordable bail amount, which operated as a de facto detention order. The second step of the procedural-due-process analysis—determining the procedures required for a valid pretrial detention order—proceeds under the *Mathews v. Eldridge* three-part balancing test, pursuant to which a court must consider, for each procedure: (1) "the private interest" at issue, (2) "the risk of an erroneous deprivation" absent the additional safeguard, and (3) the state's interest in not providing it. 424 U.S. 319, 335 (1976).

---

[6] Notably, Oregon law specifically provides for a bail hearing that comports with federal constitutional requirements. Under the Oregon Constitution, the requirements of Article I, sections 16 and 43 allow for detention only under very narrow circumstances and require all findings in support of detention to be made by clear and convincing evidence. By routinely imposing unaffordable security amounts that operate as detention orders issued without the procedural and substantive safeguards enshrined in the Oregon constitution, Oregon's trial courts violate both the letter of the law and the norm in favor of pretrial release that undergirds Oregon's system.

The balancing of the *Mathews* factors here establishes that, at a hearing to determine whether a person will be detained prior to trial, the government must provide notice of the critical issues; an inquiry into ability to pay if a financial condition is contemplated; an adversarial hearing at which the arrestee is represented by counsel and has an opportunity to be heard, to present evidence, and to confront evidence offered by the government; an impartial decision-maker; meaningful consideration of less restrictive alternatives to pretrial detention; and, if the decision-maker issues a transparent or *de facto* order of detention, findings on the record by clear and convincing evidence that detention is necessary to serve a compelling government interest, and a statement of reasons explaining the decision.

> **a.** **When requiring financial conditions, the government must conduct an inquiry into ability to pay and make on-the-record findings concerning ability to pay.**

As a threshold matter, when the government contemplates requiring a secured financial condition of pretrial release, it must provide procedures adequate to determine whether the monetary condition will operate as a detention order. The U.S. Supreme Court has held that, if the government seeks to condition physical liberty on a payment, due process requires notice that financial information will be collected and of the nature and significance of the financial information; an inquiry into the person's ability to pay; and findings on the record as to whether the person has the ability to pay. *See Turner v. Rogers*, 564 U.S. 431, 447–48 (2011) (applying the *Mathews* test and holding that, before the state may jail a person for not paying child support, the government must provide notice that ability to pay is a "critical issue," an opportunity to be heard, and "an express finding by the court that the defendant has the ability to pay"); *Bearden*, 461 U.S. at 672–73 (holding that, before the state can revoke probation for nonpayment, it must inquire into whether the nonpayment was willful). *See also United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993) (the "court must inquire into the reasons" the person did not pay and determine whether

she willfully refused to pay); *ODonnell*, 251 F. Supp. 3d at 1144–45 (concluding that Harris County's automatic use of secured money bail, without an inquiry into ability to pay, presents an intolerably high risk of erroneous deprivation of a fundamental right, and that Defendants failed to demonstrate an interest in not providing these procedural safeguards); *id.* at 1161 (requiring an inquiry into ability to pay and notice to arrestees about the significance of the financial information they are asked to provide). If, after notice and inquiry into ability to pay, the government determines that the person cannot pay the contemplated financial condition, then further procedures are required before the government may detain the person.

> **b.      The government must provide additional procedural safeguards to protect against an erroneous deprivation of Petitioner's substantive rights.**

The substantive rights to pretrial liberty and against wealth-based detention also require rigorous process to ensure the accuracy of any finding that preventive pretrial detention is necessary and to ensure that detention of the presumptively innocent remains the "carefully limited exception." *Salerno*, 481 U.S. at 755.

In *Salerno*, the Court upheld the procedural protections required by the Bail Reform Act and emphasized that an order of detention under the Act may be issued only after the provision of robust procedural safeguards, including: a "full-blown adversary hearing," "findings of fact" by "clear and convincing evidence," and a "statement of reasons for a decision to detain." *Id.* at 750, 752. Balancing the individual and government interests at stake, the *Mathews* test makes clear as explained below, that due process requires safeguards similar to the provisions of the federal statute that the Supreme Court emphasized when it upheld that law.

### (1)    The government must provide notice, an adversarial hearing, an impartial decisionmaker, and findings on the record.

The procedures due process requires prior to the deprivation of *any* liberty interest are well established. Most of them apply even in the post-conviction context, where a person's liberty interest is less than that of Mr. Rasmussen, who is presumptively innocent. In *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), the Court explained what due process requires at a probation revocation hearing for a person whose liberty interest has been diminished by a criminal conviction: (a) "notice" of the critical issues to be decided at the hearing; (b) "disclosure" of the evidence presented by the government at the hearing; (c) an "opportunity to be heard in person and to present witnesses and documentary evidence"; (d) "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)"; (e) a "neutral and detached" factfinder; and (f) findings and reasons on the record of "the evidence relied on." *See also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that "the minimum requirements of due process" require the same six procedural protections in the context of parole revocation of a convicted and sentenced person); *Turner*, 564 U.S. at 447 (requiring "notice to the defendant that his 'ability to pay' is a critical issue," the opportunity to be heard, and findings on the record); *see also, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("Parties whose rights are to be affected are entitled to be heard."); *Concrete Pipe & Prods. of Cal, Inc v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 617 (1993) ("[D]ue process requires a 'neutral and detached judge in the first instance.'") (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972); *Wolff v. McDonnell*, 418 U.S. 539, 564–65 (1974) (requiring a statement of reasons for revocation of good-time credits). Because a bail hearing implicates the fundamental right to bodily liberty prior to trial, each of these safeguards is required.

> **(2)**    **The government must prove by clear and convincing evidence that the petitioner is either a flight risk or a danger to the community.**

When the government seeks to infringe the fundamental right to bodily liberty prior to or absent a criminal conviction, the government bears a heightened evidentiary burden. As the Supreme Court explained in *Addington v. Texas*, 441 U.S. 418, 432–33 (1979), the deprivation of the fundamental right to bodily liberty requires a heightened standard of proof beyond a mere preponderance to ensure the accuracy of the decision. Since *Addington*, the Supreme Court has never permitted application of a standard lower than "clear and convincing" evidence in any context in which bodily liberty is at stake.

In *Addington*, the Supreme Court held that, under the Due Process Clause, the standard of proof required before a person may be confined in state custody for mental illness based on the possibility of future dangerousness must be "equal to or greater than" the "clear and convincing" evidentiary standard. *Id.* at 433. Applying the *Mathews* balancing test, the Court first articulated the government's interest: "to protect the community from the dangerous tendencies of some who are mentally ill." *Id*. at 426. However, the Court explained, "[s]ince the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's interests are furthered by using a preponderance standard in such commitment proceedings." *Id*. The Court then balanced the important private interests and concluded that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id*. at 427. In determining what the appropriate due process standard was above a mere preponderance, the Court explained that the "clear and convincing" standard enables the government to achieve its interest when it has a convincing basis but rigorously protects the fundamental individual rights at stake. *Id.*

Page 23 – MEMORANDUM IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

The Court has reached the same conclusion in every other context in which a person's bodily liberty is at stake. *See Santosky v. Kramer*, 455 U.S. 745, 756 (1982) ("This Court has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'"); *Cruzan by Cruzan v. Dir, Missouri Dep't of Health*, 497 U.S. 261, 282–83 (1990) (explaining that the Court has required the clear and convincing evidence standard in deportation proceedings, denaturalization proceedings, civil commitment proceedings, proceedings for the termination of parental rights, in cases involving allegations of civil fraud, and in a variety of other kinds of civil cases implicating important interests).

In another seminal case on the evidentiary standard required for deprivation of bodily liberty, the Court struck down, on due process grounds, Louisiana's statutory scheme for perpetuating the confinement of those acquitted on the basis of insanity in criminal trials. *Foucha*, 504 U.S. at 82–83. The Court held that although "[t]he State may [ ] confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous[;] [h]ere, the State has not carried that burden." *Id*. at 80 (quotation and citation omitted). In reaching this holding, *Foucha* relied on *Salerno*, 481 U.S. at 749, explaining that the Court had upheld the federal statute's preventive detention mechanism in part because it required findings of dangerousness by the longstanding "clear and convincing" standard. *Foucha* concluded with a reminder about the doctrinal importance of the "clear and convincing" standard: "freedom from physical restraint being a fundamental right," administrative detention must remain the "carefully limited exception[ ]" in our society. *Id.* at 83, 86.

Lower courts, interpreting *Salerno*, have consistently required clear and convincing evidence to justify detaining a person prior to trial. *Lopez-Valenzuela* stuck down the Arizona

pretrial detention statute in part because the Arizona law, unlike the federal Bail Reform Act, did not require the government to prove by clear and convincing evidence that an individual arrestee's detention was necessary. 770 F.3d at 784-85. As the Ninth Circuit explained, one of the features that *Salerno* explicitly relied on was that the Act required the government "to prove by 'clear and convincing evidence' that the individual presented 'a demonstrable danger to the community' and that 'no conditions of release c[ould] reasonably assure the safety of the community.'" *Id*. at 785. Most recently, in *Valdez-Jimenez*, the Nevada Supreme Court held that, given the "important nature of the liberty interest at stake, the State has the burden of proving by clear and convincing evidence that no less restrictive alternative will satisfy its interests in ensuring the defendant's presence and the community's safety." 460 P.3d at 987. Similarly, in *Humphrey*, the California Court of Appeal held under the federal Constitution that "[i]f [a] court concludes that an amount of bail the defendant is unable to pay is required to ensure his or her future court appearances, it may impose that amount only upon a determination by clear and convincing evidence that no less restrictive alternative will satisfy that purpose." 228 Cal. Rptr. 3d at 535.[7] *See also Caliste v. Cantrell*, 329 F Supp 3d 296, 313  (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019) (holding that clear and convincing evidentiary standard applies to risk of flight determination, due to "vital importance of the individual's interest in pretrial liberty recognized by the Supreme Court.").

---

[7] Numerous other state courts have held this standard to apply. *See, e.g.*, *State v. Ingram*, 230 N.J. 190, 202, 204–05 (N.J. 2017); *State v. Butler*, No. 2011-K-0879, 2011 WL 12678268 (La. App. 4th Cir. July 28, 2011), *writ not considered*, 75 So. 3d 442 (La. 2011); *Wheeler v. State*, 160 Md. App. 566, 578–80, 864 A.2d 1058, 1065 (2005); *Brill v. Gurich*, 1998 OK CR 49, ¶ 5, 965 P.2d 404, 409 (Okla. Crim. App. 1998) *as corrected* (Sept 23, 1998); *Lynch v. United States*, 557 A.2d 580, 581 (D.C. 1989) (en banc). *Compare Aime v. Com*, 414 Mass. 667, 678-83 (1993) (striking down preventive detention statute because it did not require the "clear and convincing" burden of proof), *with Mendonza v. Com*, 423 Mass 771, 782–83 (1996) (upholding successor statute and holding that "clear and convincing" evidence standard is required for pretrial detention decisions based on a prediction of future dangerousness).

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

The intermediate standard of "clear and convincing" evidence should apply regardless of whether the government seeks to detain a person pretrial based on a purported risk of danger to the community or a purported risk of flight because the private right at stake is the same. And the Supreme Court has already held in *Santosky*, *Addington*, and *Foucha* that the government must meet a heightened level of proof before it can infringe upon fundamental private interests, because those interests are "particularly important" and "more substantial than mere loss of money." *Santosky*, 455 US at 756 (quoting *Addington*, 441 US at 424). There is no compelling reason that "the degree of confidence our society thinks [it] should have in the correctness of factual conclusions," *id.* at 755 (quoting *Addison*, 441 US at 423), should be *lower* when the question is whether a person poses a risk of flight than when the question is whether the person poses a danger to other people in the community.[8]

Only one court appears to have addressed in depth whether the standard of proof the government must satisfy to detain someone due to a concern about flight risk is the same as the standard when the concern is community safety. In *Kleinbart v. United States*, 604 A.2d 861, 868 (D.C. 1992), the D.C. Court of Appeals held that the "clear and convincing" evidence standard should apply to determinations about whether to order pretrial detention based on flight risk. The court explained that "[a] defendant's liberty interest is no less—and thus requires no less protection—when the risk of his or her flight, rather than danger, is the basis for justifying detention without right to bail." *Id.* at 870. The court therefore held: "[a]lthough the federal Bail

---

[8] Analogous case law from the immigration context, where the liberty interest is considered more constrained than in the pretrial context, supports this conclusion. *See Singh v. Holder*, 638 F.3d 1196, 1203, 1204 (9th Cir. 2011) (requiring clear and convincing evidence regardless of whether the government seeks detention based on flight or dangerousness because "due process places a heightened burden of proof [when] the individual interests at stake * * * are both particularly important and more substantial than mere loss of money.") (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996); *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) (same), *vacated and remanded on other grounds*, 138 S.Ct. 1260 (2018).

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

Reform Act could be construed—purely as a matter of statutory construction—to require only a preponderance standard in risk of flight cases * * * we believe that *Salerno*'s emphasis on the clear and convincing evidence standard to sustain the constitutionality of that statute as applied to danger necessarily carries over, as a requirement of due process, to risk of flight cases." *Id*. This analysis has been adopted by the American Bar Association's Criminal Justice Standards.[9]

Thus, in order for Mr. Rasmussen to be validly detained, the state district court needed to have found, upon clear and convincing evidence, that he posed a danger to the community or was a flight risk. The court did not.

### c.    The detention order in this case violates due process.

As explained above, the Due Process Clause imposes substantive and procedural requirements on pretrial detention. In Mr. Rasmussen's case, the lower court did not make constitutionally adequate findings on the record about his dangerousness or risk of flight; nor did the court inquire into less restrictive alternatives that would achieve the government's interests. Instead, the court ordered Mr. Rasmussen released but required him to pay for his release. Because Mr. Rasmussen is unable to pay, he has remained in detention even though no court has made the requisite showing pursuant to the requisite standards.

Here, there is no question the court did not make the requisite findings by clear and convincing evidence. Indeed, it made no findings at all. It heard no testimony and it weighed no

---

[9] ABA Standard 10-5.8 explains that the "clear and convincing" standard applies to decisions relating to dangerousness and risk of flight. Courts have long looked to the Standards for guidance when answering constitutional questions about the appropriate balance between individual rights and public safety in the field of criminal justice. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010); *Strickland v. Washington*, 466 U.S. 668, 688-89, (1984); *United States v. Teague*, 953 F.2d 1525, 1533 n. 10 (11th Cir. 1992). Similarly, the Conference of Chief Justices has emphasized the safeguards upheld in *Salerno* and argued that misdemeanor arrestees detained due to inability to pay money bail are entitled to the same procedural safeguards afforded to arrestees who are detained pursuant to transparent orders of detention. *See* Brief of Conference of Chief Justices, *supra* note 5, at 38.

LEVI MERRITHEW HORST PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

evidence. Despite Mr. Rasmussen's assertions that he had no money, the court made no inquiry into his ability to pay and made no finding on that basis. The Court expressly noted that it would not be making findings related to Mr. Rasmussen's bail, and offered no basis for why payment of $250,000 was a necessary condition of release. And the court did not provide any basis as to why less-restrictive alternatives to detention were insufficient to satisfy the government's interests in court appearance and community safety. Instead, based on speculation regarding the nature of the charge, the court entered a de facto order of detention without the procedural and substantive requirements Oregon law and the Constitution requires.

If this Court issues the writ requested by Mr. Rasmussen, the State will have the opportunity to seek an order of detention against Mr. Rasmussen at a constitutionally adequate hearing. But as this case stands, Mr. Rasmussen's detention does not comply with the procedural requirements of the Due Process Clause. The court had no constitutionally sufficient basis on which to detain Mr. Rasmussen and, therefore, a writ of habeas corpus should issue ordering his release unless the state circuit court grants a thorough adversarial hearing that complies with the requirements for preventative detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he poses a flight risk or a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Rasmussen's presence at trial and the safety of the community.

## V.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court enter a conditional writ of habeas corpus ordering his release unless the state circuit court grants a thorough adversarial hearing that complies with the requirements for preventative detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he poses a flight risk or a danger to the community and, if so,

Levi Merrithew Horst PC
610 SW Alder Street, Ste 415
Portland, Oregon 97205

whether conditions of release exist that could reasonably assure Mr. Rasmussen's presence at trial and the safety of the community.

*/s/ Jesse Merrithew*

Jesse Merrithew, OSB No. 074564
jesse@lmhlegal.com
Viktoria Safarian, OSB No. 175487
viktoria@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street Suite 415
Portland Oregon 97205
(971) 229-1241

Charles Gerstein (*pro hac vice* application forthcoming)
(DC Bar No. 1033346)
Olevia Boykin (*pro hac vice* application forthcoming)
(TX Bar No. No. 24105518)
Tara Mikkilineni (*pro hac vice* application forthcoming)
(DC Bar No. 997284)
Civil Rights Corps
1601 Connecticut Ave
Washington, DC 20006
charlie@civilrightscorps.org
(202) 670-4809


*Attorneys for Petitioner*
