**Elmer M. Dickens**, OSB No. 980484
Sr. Assistant County Counsel
*Elmer_dickens@co.washington.or.us*
**Kimberly A. Stuart**, OSB No. 054685
Sr. Assistant County Counsel
*Kimberly_stuart@co.washington.or.us*
Office of Washington County Counsel
155 N First Avenue, Suite 340, MS #24
Hillsboro, OR 97124
Phone (503) 846-8747 | Fax (503) 846-8636
Attorneys for Respondent Sheriff Pat Garrett

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VERNON LEE RASMUSSEN, | No. 3:20-cv-00865-IM (Lead Case) |
| Petitioner, | No. 3:20-cv-00889-IM (Trailing Case) |
| | No. 3:20-cv-00899-IM (Trailing Case) |
| | No. 3:20-cv-00901-IM (Trailing Case) |
| v. | No. 3:20-cv-00912-IM (Trailing Case) |
| Sheriff PAT GARRETT, | |
| Washington County Sheriff, | **RESPONDENT SHERIFF PAT** |
| | **GARRETT'S RESPONSE TO** |
| Respondent. | **CONSOLIDATED PETITIONS FOR WRIT** |
| | **OF HABEAS CORPUS** |
| ERIC RANEY, | **(ORAL ARGUMENT REQUESTED)** |
| Petitioner, | |
| v. | |
| Sheriff PAT GARRETT, | |
| Washington County Sheriff, | |
| Respondent. | |

JAYSON ROBERT MEE,

                Petitioner,

      v.

Sheriff PAT GARRETT,
Washington County Sheriff,

                Respondent.

---

JULIO VILLEDA,

                Petitioner,

      v.

Sheriff PAT GARRETT,
Washington County Sheriff,

                Respondent.

---

AARON GILLIHAN,

                Petitioner,

      v.

Sheriff PAT GARRETT,
Washington County Sheriff,

                Respondent.

## Table of Contents

I.  INTRODUCTION ................................................................................................ 1

II.  COMBINED STATEMENT OF FACTS ........................................................... 2

    A.  Vernon Lee Rasmussen – 3:20-cv-00865-IM ......................................... 2

    B.  Eric Raney – 3:20-cv-00889-IM .............................................................. 4

    C.  Jayson Robert Mee – 3:20-cv-00899-IM ................................................ 8

    D.  Julio Villeda – 3:20-cv-00901-IM ........................................................ 12

    E.  Aaron Gillihan – 3:20-cv-00912-IM ..................................................... 14

III.  ARGUMENT AND AUTHORITIES ............................................................... 18

    A.  Oregon Law On Release Decisions ....................................................... 18

    B.  Release Decisions under Federal Bail Reform Act of 1984 ................... 19

        1.  The Act and supporting caselaw does not require blanket application of clear and convincing evidence for all pretrial detention orders. ................................................ 20

    C.  These Cases Are Not Appropriate For The Extraordinary Remedy of Habeas Corpus ... 22

    D.  There is no case-in-controversy between Petitioners and Respondent for the requested relief to order "a thorough adversarial hearing." ........................................... 23

    E.  *Younger* Abstention Applies to Preclude Unconditional Release or Any Other Remedy. 25

IV.  CONCLUSION ................................................................................................ 29

## Table of Authorities

**Cases**

*Arevalo v. Hennessy*, 882 F3d 763 (2018) ........................................................ 26, 27, 28

*Brecht v. Abrahamson*, 507 US 619 (1993) ................................................................. 22

*Duckworth v. Eagan*, 492 US 195  (1989) ................................................................... 22

*Gilberston v. Albright*, 381 F3d 965 (2004) ............................................................... 26

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 US 423 (1982) ............... 28

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 US 350 (1989) ......... 26

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F3d 754 (9th Cir 2014) .................... 26

*San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546

   F3d 1089 (9th Cir 2008) ......................................................................... 25

*Smith v. Idaho*, 392 F.3d 350 (9th Cir 2004) ............................................................. 25

*State ex rel Connell v. Roth*, 258 Or 428 (1971) .......................................................... 26

*State v. Sutherland*, 329 Or 359 (1999) ............................................................. 18, 27

*United States v. Abad*, 350 F3d 793 (8th Cir 2003) ..................................................... 21

*United States v. Boustani*, 932 F3d 79 (2nd Cir 2019) ................................................. 21

*United States v. Derman*, 800 Fed Appx 665 (10th Cir 2020) ......................................... 21

*United States v. Diaz-Hernandez*, 943 F3d 1196 (2019) ............................................... 21

*United States v. Gebro*, 948 F2d 1118 (1991) ........................................................... 21

*United States v. Hinton*, 113 Fed Appx 76 (6th Cir 2004) ............................................. 21

*United States v. Hir* 517 F 3d 1081 (9th Cir 2008) ...................................................... 20

*United States v. Kachkar*, 701 Fed Appx 744 (11th Cir 2017) ........................................ 21

*United States v. Motamedi*, 767 F2d 1403 (9th Cir 1985) ........................................ 20, 21

*United States v. Rosa-Ortiz*, 348 F3d 33 (1st Cir 2003) ............................................... 21

*United States v. Salerno* 481 US 739 (1987) ............................................................... 20

*United States v. Santos-Flores*, 794 F3d 1088 (2015) .................................................. 21

*United States v. Stanford*, 341 Fed Appx 979 (5th Cir 2009) ...................................... 21

*United States v. Stewart*, 19 Fed Appx 46 (4th Cir 2001) ............................................ 21

*United States v. Vasquez-Benitez*, 919 F3d 546 (DC Cir 2019) ................................... 21

*United States v. Winsor*, 785 F2d 755 (1986) .............................................................. 21

*Younger v. Harris,* 401 US 37 (1971) ........................................................ 25, 26, 27, 28, 29

**Statutes**

18 USC § 3141 ................................................................................................................ 19

18 USC § 3142(f)(2) ....................................................................................................... 20

ORS 135.230 ............................................................................................................ 18, 19

ORS 135.240 ........................................................................................ 18, 20, 21, 26, 27

ORS 135.245(3) .............................................................................................................. 19

ORS 135.265(1) .............................................................................................................. 19

ORS 137.700 ............................................................................................ 2, 5, 8, 12, 18

ORS 161.605 ..................................................................................................................... 5

ORS 7.020 ......................................................................................................................... 2

**Other Authorities**

Or. Const., Art. I, § 14 ............................................................................................. 18, 26

Or. Const., Art. I, § 43 ............................................................................................. 18, 26

**Rules**

Fed. R. Civ. Proc. 19 .............................................................................................. 23, 24

Fed. R. Evid. ..................................................................................................................... 2

## I.    INTRODUCTION

In this matter, the court consolidated five separate petitions for habeas corpus relief pursuant to 28 U.S.C. § 2241 into one case: (*Rasmussen v. Garrett*, *Raney v. Garrett*, *Mee v. Garrett*, *Villeda v. Garrett*, and *Gillihan v. Garrett*). Each of the five Petitioners (collectively, "Petitioners") are being held pre-trial in the Washington County Jail ("Jail") on serious felony charges, and Sheriff Pat Garrett ("Sheriff" or "Respondent") maintains physical custody of each of these petitioners as the elected official in charge of the jail. (Declaration of Elmer M. Dickens "Dickens Dec." filed herewith, ¶ 2). Each petitioner has been charged by indictment with serious felony persons crimes under ORS 137.700 – commonly referred to as Ballot Measure 11 crimes, which requires mandatory minimum sentences – *see* Combined Statement of Facts, *supra*, Part II. All petitioners are represented by common counsel and filed similar motions for a reduction in their security release amount (hereinafter "bail") in the trial court. (Case 3:20-cv-00865-IM "Rasmussen" ECF 1-1, App'x 6-19; Case 3:20-cv-00889-SU "Raney" ECF 1-1, App'x 006-017, 019-030; Case 3:20-cv-00899-IM "Mee" ECF 1-1, App'x 007-055; Case 3:20-cv-00901-MK "Villeda" ECF 1-1, App'x 007-015; Case 3:30-cv-00912-IM "Gillihan" ECF 1-1, App'x012-029).

Each petitioner received a significant reduction ranging from 44.4% to 87.5% in the amount of bail necessary to secure their release. Those reductions were only after a lengthy hearing in which each petitioner was represented by counsel, and where each had an opportunity to present evidence, including witnesses, and argument to the trial court. Two of the five Petitioners requested and received multiple hearings. Petitioner Raney had two separate release hearings – (3/17/2020 and 4/2/2020). (*See* Dickens Dec., Ex. 1). Petitioner Gillihan had three pre-trial release hearings – (10/29/2019, 3/20/2020, and 5/18/2020). (*Id.*, Ex. 2). Despite

significant reductions in bail amounts, each petitioner remains in Jail pending trial. Each

petitioner filed a writ of habeas corpus in the Oregon Supreme Court, all of which were

summarily denied. Petitioners now ask this court for a conditional Writ of Habeas Corpus

requiring the state trial court to hold yet another release hearing using heightened due process

standards applicable to one type of outright denial of release. This response is supported by the

declaration of Elmer M. Dickens and attached exhibits.[1]

## II.   COMBINED STATEMENT OF FACTS

### A.  Vernon Lee Rasmussen – 3:20-cv-00865-IM

1.      Petitioner was indicted by a Grand Jury on eight separate charges, and the victim

is alleged to be a child under the age of twelve. (Rasmussen ECF 1-1, App'x 1).

2.      As part of that indictment Petitioner was charged with two counts of Rape in the

First Degree, a class A felony. Because the alleged victim was under the age of twelve, each

count is subject to a mandatory minimum sentence of 300 months (25 years).

ORS 137.700(2)(b)(D).

3.      Petitioner was charged with two counts of Unlawful Sexual Penetration in the

First Degree, a class A felony. Because the alleged victim was under the age of twelve, each

count is subject to a mandatory minimum of 300 months. ORS 137.700(2)(b)(F).

4.      Petitioner was charged with four counts of Sexual Abuse in the First Degree, a

class B felony punishable by up to ten years in jail, and which carries a mandatory minimum

sentence of 75 months. ORS 137.700(2)(a)(P).

---

[1] Respondent requests the court take judicial notice of any subsequent events in Petitioners'
underlying criminal state court matters which may render their petitions moot. *See* Fed. R. Evid.
201 (b)(2); *See also* ORS 7.020, *et seq.*, (noting the register, *i.e.*, the Oregon Judicial Information
Network (OJIN) is the official record of the Oregon State Court System).

5.      Petitioner has a history of criminal convictions, including felony convictions. (Rasmussen ECF 1-1, App'x 14 at ¶ 4).

6.      Petitioner has eight alleged failures to appear between 1997 and 2012. (*Id.*)

7.      Petitioner has lost his job, is unemployed, and does not own any real property; he has rented an apartment for several years. Rasmussen ECF 1-1, App'x 14).

8.      Petitioner, through counsel Brian Decker, filed a Motion for the Reduction of Bail and the supporting affidavit on March 11, 2020. (Rasmussen ECF 1-1, App'x 6).

9.      The affidavit of Brian Decker was provided to the trial court as part of a Motion for Reduction in Bail and was properly considered as evidence by the trial court during the release hearing. (Rasmussen ECF 1-1, App'x 14).

10.     In response to that motion, a pre-trial release hearing was held by the Honorable Rebecca Guptill on March 18, 2020. This hearing was attended by a Deputy District Attorney – Jason Weiner, Petitioner, and Petitioner's counsel Brian Decker appeared by phone. (Dickens Dec., Ex. 3 (Transcript of Proceedings in WCCC Case No. 20CR12593 from March 18, 2020)).

11.     Petitioner's counsel argued for a significant bail reduction. (*Id.* at 3:20-7:25).

12.     The Deputy DA provided the court with information and argued against reducing the security amount. (*Id.* at 8:22-10:21).

13.     In the hearing, the Deputy District Attorney told the judge that the Defendant had made admissions to detectives about touching the victim multiple times and that he had written about sexual fantasies involving the victim in his journal. Counsel for Defendant appeared to concede that Defendant did in fact make the admissions but argued that they were the product of a coercive interview. (*Id.* at 11:22-12:5).

14.     Petitioner's counsel made a rebuttal argument at the end of the Deputy DA's statement. (*Id.* at 10:24-12:17).

15.     In that release hearing, the court specifically noted the following:

    a)   That Defendant (Petitioner) is fifty years old. (*Id.* at 12:23-25);

    b)   That Defendant has a "significant failure to appear history." (*Id.* at 13:1-3);

    c)   That Defendant has a "reasonably significant criminal history." (*Id.* at 13:3);

    d)   That the allegations in the case are serious. (*Id.* at 13:4);

    e)   That "he (Defendant) does not have significant assets." (*Id.* at 13:4-5); and

    f)   That he does have ties to the community (his wife and a newborn child) and that wife would be willing to serve as a responsible party. (*Id.* at 13:7-9).

16.     The trial court reduced the security release amount from $2,000,000 to $250,000, required that Petitioner post 10% of that $250,000 ($25,000) and sign a release agreement to be released from custody. (*Id.* at 13:10-11).

17.     The trial court also included a number of additional conditions, including the need for a responsible party to supervise Defendant, no contact with victim or minors (except his own newborn child), no alcohol, marijuana, drugs or pornography, and that if released Defendant would be on house arrest. (*Id.* at 13:11-24).

18.     A twelve-person jury trial has been set for December 8, 2020. (Dickens Dec., Ex. 4).

**B.  Eric Raney – 3:20-cv-00889-IM**

1.     Petitioner was indicted by a Grand Jury on five separate charges, relating to an alleged act of domestic violence in the immediate presence of or witnessed by the victim's minor child. (Raney ECF 1-1, App'x 001).

2.      As part of that indictment Petitioner was charged with two counts of Assault in the Second Degree constituting Domestic Violence, a class B felony punishable by up to ten years in jail, and which carries a mandatory minimum sentence of 90 months (7.5 years). ORS 137.700(2)(a)(F).

3.      Petitioner was charged with one count of Assault in the Fourth Degree Constituting Domestic Violence, a class C felony punishable by up to five years in jail. ORS 161.605.

4.      Petitioner was charged with one count of Unlawful Use of a Weapon, a class C felony punishable by up to five years in jail.

5.      Petitioner was charged with one count of Assault in the Fourth Degree Constituting Qualifying Domestic Violence, a Class A Misdemeanor punishable by up to 364 days in jail.

6.      Petitioner has a history of criminal convictions, mostly relating to driving under the influence of alcohol or intoxicants and driving while suspended. (Raney ECF 1-1, App'x 012 at ¶ 5)). Petitioner also has one conviction for failure to appear in 2012. (*Id.*) Petitioner has a separate conviction for failure to appear in 2009 that was not included in Ms. Maloney's declaration.

7.      Petitioner has "hopes to return to work" but has no definite employment, does not appear to own any real property. (Raney ECF 1-1, App'x 012 at ¶ 4.)  He was not working from November 2019 through the date of his arrest in February 2020. (*Id.*)

8.      Petitioner, through counsel Malori Maloney, filed a Motion for the Reduction of Bail and the supporting affidavit on March 8, 2020. (Raney ECF 1-1, App'x 006).

9.    The affidavit of Malori Maloney was provided to the trial court as part of a Motion for Reduction in Bail and was properly considered as evidence by the trial court during the release hearing. (*Id.* at App'x 012).

10.    In response to that motion, a pre-trial release hearing was held by the Honorable Rebecca Guptill on March 17, 2020. This hearing was attended by a Deputy District Attorney – David Pitcher, Petitioner, and Petitioner's counsel Malori Maloney appeared by phone. (*Id.* at App'x 033-034).

11.    Petitioner's counsel argued for a significant bail reduction. (*Id.* at App'x 036-039 (4:7-8:7)).

12.    The Deputy DA provided the court with information and argued against reducing the security amount. (*Id.* at App'x 040 (8:10)).

13.    In the hearing, the Deputy District Attorney read a victim's statement, indicating that the victim had safety concerns for herself and her children, that the Defendant lacked meaningful contacts in Oregon, that the Defendant had assured the Sherwood Police Department that he would turn himself in, but continued to avoid arrest for three months following the alleged domestic violence incident that resulted in these charges, and that he had spent that time homeless or living in shelters, and frequenting bars and strip clubs. Mr. Pitcher also informed the judge of Petitioner's two previous failures to comply with court orders and failures to appear, and multiple incidents of driving under the influence, including one for which he is currently on supervision.

14.    Petitioner's counsel made a rebuttal argument at the end of the Deputy DA's statement. (*Id.* at App'x 045-047 (13:8-15:1)).

15.     Petitioner also addressed the court, acknowledging his difficulties with alcoholism and stressing his commitment to alcohol treatment at the VA. (*Id.* at App'x 047 (15:9)).

16.     In that release hearing, the court specifically noted that Defendant is "indigent and … certainly cannot afford to pay 275,000, the 10 percent of that…" (*Id.* at App'x 049 (17:2-3)).

17.     The trial court reduced the security release amount from $275,000 to $50,000, required that Petitioner post 10% of that $50,000 ($5,000). (*Id.* at App'x 048 (16:22-24)).

18.     The trial court also included a number of additional conditions, including the need for a responsible party to supervise Defendant, to wear an alcohol monitoring bracelet, to reside with the responsible party when not engaged in inpatient or outpatient alcohol treatment, no contact with victim or minors (except his own newborn child), no alcohol, marijuana, drugs or pornography, and that if released Defendant would be on house arrest, and that Defendant would have to abide by the terms of his protective order proceedings. (*Id.* at App'x 048-050 (16:25-18:14)).

19.     A second pre-trial release hearing was held on April 2, 2020, following a motion for reconsideration. This hearing was attended by a Mr. Pitcher, Ms. Maloney by phone, and Petitioner. (Raney ECF 1-1, App'x 055-056).

20.     In this second hearing, Ms. Maloney argued that her ability to represent her client was imperiled by the COVID-19 crisis, and that Petitioner was unable to pay the 10% of $50,000 as ordered by the judge and was in fact in worse straits then before, and that Petitioner's COPD put him at risk during the COVID-19 outbreak. (*Id.* at App'x 060-063 (6:11-9:15)).

21.     The Deputy DA again provided the court with information and argued against reducing the security amount and read another victim's statement. (*Id.* at App'x 063-065

(9:17-11:15)). The alleged victim also offered information and argued against a reduction in bail. (*Id*. at App'x 066 (12:4-11)).

22.    Petitioner's counsel again made a rebuttal argument following the Deputy DA's statement (*Id.* at App'x 066-68 (12:15-14:22)). Petitioner also addressed the court. (*Id.* at App'x 069-070 (15:18-16:17)).

23.    The Court made additional findings about the COVID-19 issues and declined to modify the conditions set forth in her previous release order.

24.    A twelve-person jury trial has been set for July 21, 2020. (Dickens Dec., Ex. 1).

**C.  Jayson Robert Mee – 3:20-cv-00899-IM**

1.    Petitioner was indicted by a Grand Jury on five separate charges, and the victim is alleged to be a child under the age of twelve. (Case 3:20-cv-00899-IM "Mee" ECF 1-1, App'x 001).

2.    As part of that indictment Petitioner was charged with two counts of Sodomy in the First Degree, a class A felony. Because the alleged victim was under the age of twelve, each count is subject to a mandatory minimum sentence of 300 months (25 years). ORS 137.700(2)(b)(E).

3.    Petitioner was charged with two counts of Using Child in Display of Sexually Explicit Conduct, a class A felony. Each count is subject to a mandatory minimum of 70 months. ORS 137.700(2)(b)(B).

4.    Petitioner was charged with one count of Sexual Abuse in the First Degree, a class B felony punishable by up to ten years in jail, and which carries a mandatory minimum sentence of 75 months. ORS 137.700(2)(a)(P).

5.      Petitioner has no history of criminal convictions. (Mee ECF 1-1, at App'x 015, ¶ 4).

6.      Petitioner has no alleged failures to appear. (*Id.* at ¶ 5).

7.      Petitioner has no job, was on disability until the payments ceased due to his incarceration and does not own any real property; he had been living in a nursing home for the four months prior to his incarceration. (*Id.*) According to Petitioner's counsel, Mr. Decker, Petitioner is HIV positive, immunocompromised, has neurosyphilis, a neurological condition called moyamoya and is wheelchair bound. (Dickens Dec., Ex. 5 (Transcript of Proceedings in WCCC Case No. 19CR32388 from March 18, 2020) at 13:14-17).

8.      Petitioner, through counsel Brian Decker, filed a Motion for the Reduction of Bail and the supporting affidavit on March 13, 2020. (Mee ECF 1-1 at App'x 007)).

9.      The affidavit of Brian Decker was provided to the trial court as part of a Motion for Reduction in Bail and was properly considered as evidence by the trial court during the release hearing. (*Id.* at App'x 015).

10.     In response to that motion, a pre-trial release hearing was held by the Honorable Rebecca Guptill on March 18, 2020. This hearing was attended by a Deputy District Attorney Jason Weiner, with Mr. Decker by phone. (Dickens Dec., Ex. 6).

11.     Petitioner's counsel argued for a significant bail reduction from $1.25 million to zero. (*Id*. at 16:22-25). This reduction was based in large part on concerns regarding COVID-19 in the Jail, Mr. Mee's medical conditions, making current arrangements for a bed space at another care facility, an upcoming aid and assist hearing and his indigency. (*Id.* at 14:13-16:11). Mr. Decker further asked the court to find the minimum statutory amounts against Mr. Mee as

unconstitutional as applied to him. (*Id.* at 16:15-21). Also, that Mr. Mee would be able to be

released if he "were a wealthy man." (*Id.* at 16:24-25).

12.     The victim's father ("Father") provided a victim impact statement detailing the

grooming and position of trust given to petitioner in their family. (*Id.* at 17:15-21:14). He

testified as to the psychological terror that he and his family, including the victim now 12 years

old, would experience knowing Petitioner would be released into the community. (*Id.* at 20:16-

18). Father also contested Petitioner's claim of being HIV positive, due to his prior relationship

with Petitioner and knowing that Petitioner was taking Truvada, an anti-HIV drug. (*Id.* at 17:15-

18:2). He also testified Petitioner had a fund raising online to raise money for doctor-assisted

suicide and believed Petitioner intended to kill himself prior to being arrested. (*Id.* at 21:1-9). He

also requested the reduction for bail be denied. (*Id.* at 21:10-14).

13.     Deputy DA Weiner provided the court with information and argued against

reducing the security amount. (*Id.* at 24:16-21:2). Specifically, based on the significant degree of

manipulation due to the circumstances of the charges, being in a position of trust with the victim,

the victim's family and Father and using that position to groom and manipulate the victim, who

was approximately 10 years old at the time of the offense, into a position of being able to

sexually abuse the victim. (*Id.* at 23:7-21). Also, regarding the aid and assist, he relayed to the

court the doctor at the Oregon State Hospital's belief Mr. Mee was malingering and able to aid

and assist in his defense, despite Mr. Mee's statements to the contrary. (*Id.* at 22:10-23:6).

14.     For the record, Judge Guptill noted recognizing the fact pattern of Petitioner's

case from a warrant or PC affidavit and was familiar with the allegations. (*Id.* at 24:3-8).

15.     Mr. Decker's rebuttal denied that Petitioner was suicidal and relayed the aid and

assist related to Petitioner's neurological diseases. (*Id.* at 24:10-25:23). He also challenged the

State's concerns as not evidence "from which the Court can determine that Mr. Mee is ineligible for release, and must be detained prior to trial." (*Id.* at 25:13-15). Mr. Decker specifically argued that "clear and convincing" evidence was required for to determine Mr. Mee as ineligible for release and to detain him, pretrial. (*Id.* at 25:16-20). Also, the court was not allowed to set an unaffordable bail amount and deny Mr. Mee the opportunity to be released on the same conditions as someone in the same position, but able to afford security. (*Id.* at 25:20-25:23).

16.    In conclusion, the court specifically noted the following:

    a)  As the judge volunteering to be at the Law Enforcement Center located in the Sheriff's building that also houses the jail and who enters the jail on almost a daily basis, she has stayed well appraised of efforts within the Jail, the courtroom and surrounding system regarding COVID-19.

    b)  If Mr. Mee was seeking a care facility, whether his health issues were present, a care facility might not be the best place to avoid COVID-19 infection. She believed he had some health conditions that likely do put him at a higher risk than some of the population, but age was not one of them. (*Id.* at 28:6-13). She adopted the standards set by the Oregon supreme court chief justice regarding people at high risk. (*Id.* at 29:4-8).

    c)  Regarding public safety, the allegations demonstrated or provided concern for the safety of the community, particularly that Mr. Mee took advantage of a close relationship, the circumstances and the severity of the alleged crimes, which were extremely concerning. (*Id.* at 29:9-15).

    d)  She did not necessarily think Mr. Mee was a flight risk or someone who had significant means to post $125,000 security. (*Id.* at 29:16-19).

17.    The trial court reduced the security release amount from $1,250,000 to $250,000, required that Petitioner post 10% of that $250,000 ($25,000). (*Id.* at 29:20-30:3).

18.    The trial court also included a number of additional conditions, including the need for a verified bed at an assisted living facility, no contact with victim or minors, no alcohol, marijuana, drugs or pornography, and that if released Defendant would be on house arrest. (Mee ECF 1-1, App'x 056; Dickens Dec., Ex. 5 at 30:4-9).

19.     Other than the March 18, 2020 hearing, Mr. Mee has not requested any further release hearing. (Dickens Dec., Ex. 6). He is currently set for an aid and assist hearing on or about July 14, 2020. (*Id.*)

**D.  Julio Villeda – 3:20-cv-00901-IM**

1.     Petitioner was indicted by a Grand Jury on nine separate charges. (Case 3:20-cv-00901-MK ("Villeda") ECF 1-1, App'x 001).

2.     As part of that indictment Petitioner was charged with one counts of Rape in the First Degree, constituting Domestic Violence, a class A felony subject to a mandatory minimum sentence of 100 months. ORS 137.700(2)(a)(J).

3.     Petitioner was charged with one count of Sodomy in the First Degree, constituting Domestic Violence a class A felony subject to a mandatory minimum of 100 months. ORS 137.700(2)(a)(L).

4.     Petitioner was charged with two counts of Sexual Abuse in the First Degree, a class B felony punishable by up to ten years in jail, and which carries a mandatory minimum sentence of 75 months. ORS 137.700(2)(a)(P).

5.     Petitioner was charged with one count of Endangering a Person Protected by a Family Abuse Prevention Act Restraining Order, a class C felony punishable by up to 5 years in jail.

6.     Petitioner was charged with one count of Tampering with a Witness, a class C felony punishable by up to 5 years in jail.

7.     Petitioner was charged with three counts of Assault in the Fourth Degree, constituting domestic violence, a class A Misdemeanor punishable by up to 1 year in jail.

8.    Petitioner was also being held in jail on a probation violation following two convictions for harassment. (Villeda ECF 1-1, App'x 20-21 at 3:23-4:1).

9.    Petitioner has a history of criminal convictions, including a conviction for failure to appear in the second degree in 2012. (*Id.*, App'x 013 at ¶ 4).

10.    Petitioner, through counsel Malori Maloney, filed a Motion for the Reduction of Bail and the supporting affidavit on March 22, 2020. (*Id.*, App'x 007).

11.    The Declaration of Malori Maloney was provided to the trial court as part of a Motion for Reduction in Bail and was properly considered as evidence by the trial court during the release hearing. (*Id.*, App'x 013).

12.    In response to that motion, a pre-trial release hearing was held by the Honorable Rebecca Guptill on March 27, 2020. This hearing was attended by a Deputy District Attorney – Nadya V. Martin, Petitioner, and Petitioner's counsel Malori Maloney appeared by phone. (*Id.*, App'x 019).

13.    Petitioner's counsel argued for a significant bail reduction and recommended release, while acknowledging that Petitioner did not have a statutory right to release on the probation violation. (*Id.*, App'x 020-027).

14.    The Deputy DA provided the court with information and argued against reducing the security amount. (*Id.*, App'x 027-032 (10:3-15:18)).

15.    Petitioner's counsel made a rebuttal argument at the end of the Deputy DA's statement. (*Id.*, App'x 032-034 (15:22-17:20)).

16.    Petitioner also made a statement to the Court, stating that he could work from home as a medical translator if released. (*Id.*, App'x 034-035 (17:24-18:13)).

17.    In that release hearing, the court specifically noted the following:

    a) That Defendant (Petitioner) does not have high-risk factors for contracting COVID-19 and is not of an age that would be a concern. (*Id.* at App'x 036 (19:11-15));

    b) That Defendant has a "at least a history of some failure to appear." (*Id.*);

    c) That the allegations in the case are serious. (*Id.* (19:17));

    d) That the Court must "consider the safety of the victim, and public safety in general." (*Id.* (19:19-21));

    e) That the Petitioner has a history of violating court orders. (*Id.* (19:22-23));

    f) That Petitioner is indigent; (*Id.* at App'x 037 (20:7)); and

    g) That the Washington County Jail is safe. (*Id.* (20:9-11)).

18.    The trial court reduced the security release amount from $260,000 to $100,000, required that Petitioner post 10% of that $100,000 ($10,000) and sign a release agreement to be released from custody. (*Id.* at App'x 037-038).

19.    The trial court also included a number of additional conditions, including the need for a responsible party to supervise Defendant, no contact with victim or any witnesses, no alcohol, marijuana, or drugs; GPS monitoring;  and that if released Defendant would be on house arrest and must follow all protective orders and court orders. (*Id.* at App'x 038).

20.    A twelve-person jury trial has been set for August 11, 2020. (Dickens Dec., Ex. 7).

**E.  Aaron Gillihan – 3:20-cv-00912-IM**

1.    Petitioner was indicted by a Grand Jury on twelve separate charges. (Gillihan ECF 1-1, App'x001).

2.    As part of that indictment Petitioner was charged with six counts of Encouraging Child Sexual Abuse in the First Degree, a class B felony punishable by up to ten years in jail.

3.    Petitioner was charged with six counts of Encouraging Child Sexual Abuse in the Second Degree, a class C felony punishable by up to 5 years in jail.

4.    Petitioner has a history of criminal convictions, including felony convictions for sexual abuse in the first degree. (*Id.* at App'x009).

5.    Petitioner lived in Portland for 30 years, and now resides in Chiloquin, Oregon. (*Id.* at ¶ 5).

6.    Petitioner has been unemployed since 2009. (*Id.* at ¶ 6).

7.    Petitioner, through counsel Brian Decker, filed a Motion for Pretrial Release and the supporting affidavit on October 23, 2019. (Gillihan ECF 1-1, App'x007-010).

8.    In response to that motion, a pre-trial release hearing was held by the Honorable Rebecca Guptill on October 28, 2019. This hearing was attended by a Deputy District Attorney – Jason Weiner, Petitioner, and Petitioner's counsel Brian Decker. (*Id.*, App'x032).

9.    Petitioner's counsel argued for release. (*Id.*, App'x033-035 (3:9-5:8)).

10.    The Deputy DA provided the court with information and argued against reducing the security amount. (*Id.* at App'x033-037 (5:12-7:24)).

11.    In the hearing, the Deputy District Attorney told the judge that the Defendant had tested deceptive through the process of several polygraphs, giving information that he was performing searches for incest pornography that led his probation officer to review his tablet, where he found the material underlying the charges. (*Id.* at App'x037 (7:8-17)).

12.    Petitioner's counsel made a rebuttal argument at the end of the Deputy DA's statement. (*Id.* at App'x038-039 (8:2-9:3)).

13.     Petitioner's wife also made a statement to the Court as a proposed responsible

person, stating that she does not drive, lives at a campground and does not have a landline

telephone. (*Id.* at App'x039-040 (9:4-10:15)).

14.     Petitioner's mother made a statement to the Court as a proposed responsible party

and stated that she would be able to be responsible for Petitioner and could install a landline

telephone if necessary. (*Id.* at App'x040-042 (10:16-12:3)).

15.     In that release hearing, the court specifically noted the following:

   a)   That Defendant (Petitioner) has a criminal history of sexual assault, "a serious
        conviction to have," and which relates to the current allegations. (*Id.* at
        App'x042 (12:4-9));

   b)   That Defendant has a history of failure to register as a sex offender, which
        "makes me [the Court] question whether or not the defendant can follow court
        orders properly." (*Id.* (12:18-21));

   c)   That the allegations in the case are serious and call into question whether
        Petitioner is currently a threat to the community at large. (*Id.* at App'x042-
        043); and

   d)   That the Petitioner is on disability, of limited means and with ties to the
        community. (*Id.*)

16.     The trial court reduced the security release amount from $180,000 to $100,000,

required that Petitioner post 10% of that $100,000 ($10,000). The court imposed additional

conditions as well: that he be released to a responsible person (his mother), that she install a

landline, and that Petitioner not own or use a computer or device with internet capability. (*Id.* at

App'x043).

17.     The trial court also included a number of additional conditions, no alcohol,

marijuana, or drugs; no contact with minors; GPS monitoring; and that if released Defendant

would be on house arrest and must follow all protective orders and court orders. (*Id.* at

App'x044).

18.     Petitioner, through Mr. Decker, moved for reconsideration the motion for pretrial release in light of the COVID-19 pandemic, on March 16, 2020. (*Id.* at App'x012).

19.     In response to that motion, a pre-trial release hearing was held by the Honorable Rebecca Guptill on March 20, 2020. This hearing was attended by a Deputy District Attorney – Jason Weiner, Petitioner, and Petitioner's counsel Brian Decker. (*Id*. at App'x049).

20.     Petitioner's counsel again argued for release due to the change in circumstances owing to the coronavirus. (*Id.* at App'x050-062 (3:11-15:14)).

21.     The Deputy DA provided the court with information about the jail's handling of the pandemic and the risks of releasing Petitioner into the community and argued against reducing the security amount. (*Id.* at App'x062-066 (15:18-19:5)).

22.     Petitioner's counsel made a rebuttal argument at the end of the Deputy DA's statement. (*Id.* at App'x066-068 (19:9-21:8)).

23.     In that release hearing, the court specifically noted the following:

   a)  That the Washington County Jail had taken reasonable steps to reduce population and ensure social distancing; (*Id.* at App'x069);

   b)  That there had to that date been no confirmed cases of COVID-19 in the jail, and that protocols were in place should someone develop symptoms; (*Id.*);

   c)  That traffic into and out of the jail had been reduced; (*Id.*);

   d)  That the jail cells and common areas were being rigorously cleaned; (*Id.*); and

   e)  That Petitioner is 42 years old and not in a high-risk group for contracting COVID-19. (*Id.*)

24.     The trial court declined to modify its ruling on Petitioner's pretrial release.

25.     A twelve-person jury trial has been set for August 4, 2020. (Dickens Dec., Ex. 2).

## III.    ARGUMENT AND AUTHORITIES

### A.  Oregon Law On Release Decisions

Oregon's Constitution and statutes provide that all defendants are eligible for release from custody pending trial except for two specific exceptions where specific factors prohibit release - (1) persons accused of murder or treason where the presumption of guilt is strong, ORS 135.240(2); Or. Const., Art. I, § 14 and (2) persons accused of violent felonies where probable cause exists to believe they committed the crime and the court finds by clear and convincing evidence that they would be a danger to the public or victim if released. ORS 135.240 (4); *see e.g.*, Or. Const., Art. I, § 43. As found by the trial court, none of the five Petitioners involved in this proceeding fit either of those two exceptions, and all were and are eligible for pretrial release. If those two exceptions are inapplicable, a judge making a release decision can elect one of three options: personal recognizance, conditional release or security release. *See* ORS 135.230; *see also* ORS 135.240(5)(a). Because each petitioner was charged with at least one serious felony person crime under ORS 137.700, by law, the judge was required to impose a minimal security amount of $50,000, unless the judge determined that this amount would be unconstitutionally excessive. ORS 135.240(5); *see e.g., State v. Sutherland*, 329 Or 359, 368 (1999) (upholding the constitutionality of ORS 135.240(5) against facial constitutional challenge under Oregon and U.S. Constitutions). For each petitioner, the judge ordered a security release amount as required by and consistent with ORS 135.240(5) and imposed other conditions designed to ensure the appearance of each petitioner at future court proceedings. *See* SOF, *supra*, Part II, § A-E.

For release, an Oregon judge is required to consider statutory criteria, primary and secondary, to determine " the form of the release most likely to ensure the safety of the public and the victim, the defendant's court appearance and that the defendant does not engage in

domestic violence while on release." ORS 135.230(10) (defining "release decision"). If that decision includes setting a security amount for release, that amount must reasonably assure the defendant's appearance. ORS 135.265(1). After giving priority to primary release criteria, the judge must "impose the least onerous condition reasonably likely to ensure the safety of the public and the victim and ensure the person's later appearance[.]" ORS 135.245(3). Those primary release criteria are:

a) The reasonable protection of the victim or public;

b) The nature of the current charge;

c) The defendant's prior criminal record, if any, and, if the defendant has previously been released pending trial, whether the defendant appeared as required;

d) Any facts indicating the possibility of violations of law if the defendant is released without regulations; and

e) Any other facts tending to indicate that the defendant is likely to appear. (ORS 135.230(7)).

Any secondary release criteria may be used, but is not required, including:

a) The defendant's employment status and history and financial condition;

b) The nature and extent of the family relationships of the defendant;

c) The past and future residences of defendant;

d) Names of persons who agree to assist the defendant in attending court at the proper time; and

e) Any facts tending to indicate that the defendant has strong ties to the community. (ORS 135.230(11)).

**B. Release Decisions under Federal Bail Reform Act of 1984**

Respondent is well-aware that these proceedings do not implicate the federal Bail Reform Act ("Act"), 18 USC § 3141, *et seq.*, but believes cases decided under the Act show that petitioner's arguments are specious. Under the Act, two separate justifications allow a person to be denied *any* type of release prior to trial – resulting in an actual order of detention. *See* 18 USC

§ 3142(f)(2). The first justification for an actual detention order is that the defendant is found to present a danger to the public or victim, 18 USC § 3142(f)(2)(B) and the second is that the defendant is found to be a flight risk. 18 USC § 3142(f)(2)(A). If the court finds either reason applies, it enters an actual detention order and a defendant cannot be released under any circumstances. 18 USC § 3142(e)(1). There is no doubt that when the question before the court is whether the defendant may present a danger to the public or the victim, it required a heightened standard of clear and convincing evidence and findings on the record. *See United States v. Salerno* 481 US 739, 750-51, 107 S. Ct. 2095, 95 L. Ed.2d (1987). The Ninth Circuit has held the same in *United States v. Hir,* 517 F 3d 1081, 1086 (9th Cir 2008) citing the Act. Oregon statute also requires this same finding by clear and convincing evidence when the state seeks to **deny** someone from any release on the basis of dangerousness. ORS 135.240(4)(a)(B).

> **1. The Act and supporting caselaw does not require blanket application of clear and convincing evidence for all pretrial detention orders.**

Contrary to Petitioner's claims, current Ninth Circuit law does not support the proposition that clear and convincing evidence is required for **every** type of pretrial detention order. There is no question a person may be subject to an actual detention order because they present a flight risk without the Government showing such a risk by clear and convincing evidence. *See United States v. Motamedi*, 767 F2d 1403, 1406-7 (9th Cir 1985) (discussing congressional intent to imposed heightened standard for dangerousness). This type of detention order for flight risk is justified when the government proves that risk by a preponderance of the evidence. *Id.* at 1407 (upholding preponderance of the evidence as the standard of proof applicable for flight risk under the Act). That lesser standard for an actual detention order has been clearly articulated again and again by the Ninth Circuit Court of Appeals over a span in excess of thirty years. The Ninth Circuit has repeatedly found that when a government requests

pretrial detention of a person for flight risk, they must make a showing <u>based only upon a preponderance of the evidence</u>. *United States v. Diaz-Hernandez*, 943 F3d 1196 (2019); *United States v. Santos-Flores*, 794 F3d 1088, 1090 (2015); *United States v. Gebro*, 948 F2d 1118, 1121 (1991); *Motamedi*, 767 F2d at 1407; *United States v. Winsor*, 785 F2d 755 (1986).

The Ninth Circuit is not alone in allowing a detention order for flight risk based upon a preponderance of the evidence; they are joined by the First, Second, Fourth, Fifth, Sixth, Eighth, Tenth, Eleventh, and DC Circuits in so holding, all of which have upheld pretrial detention on the basis of flight risk subject to a preponderance of the evidence standard. *United States v. Rosa-Ortiz*, 348 F3d 33 (1st Cir 2003); *United States v. Boustani*, 932 F3d 79 (2nd Cir 2019); *United States v. Stewart*, 19 Fed Appx 46 (4th Cir 2001); *United States v. Stanford*, 341 Fed Appx 979 (5th Cir 2009); *United States v. Hinton*, 113 Fed Appx 76 (6th Cir 2004); *United States v. Abad*, 350 F3d 793 (8th Cir 2003); *United States v. Derman*, 800 Fed Appx 665 (10th Cir 2020); *United States v. Kachkar*, 701 Fed Appx 744 (11th Cir 2017); *United States v. Vasquez-Benitez*, 919 F3d 546 (DC Cir 2019).

It is well-established in all the above circuits that an actual detention order outright denying the defendant **any** type of release can be justified by a showing that the defendant presents a flight risk by a preponderance of the evidence. *See also Motamedi*, 767 F2d at 1407 (Noting the standard of proof usually applicable to pretrial proceedings is preponderance of the evidence). No Petitioner in these proceedings was subject to any order of detention, whether for dangerousness or as a flight risk.  Instead, in each case the judge considered the individualized circumstances of the defendant, the primary and secondary release criteria set out in Oregon statute, the mandates of ORS 135.240(5), made significant reductions in the required security

amount and affirmatively **authorized** the release of each petitioner with specific conditions designed to ensure their appearance at future court dates.

It would be odd indeed if the law allowed an actual detention order on a showing by a preponderance of the evidence yet imposed a heightened standard of proof when a judge affirmatively authorizes security release of the defendant with conditions. Petitioners make much of their theory that by setting bail at any level above what the defendant can afford, the court is making a *de facto* detention order, and they argue that it is subject to a heightened evidentiary standard of clear and convincing evidence. That position completely ignores the fact that courts routinely enter an actual order of detention with no possibility of release based only upon a preponderance of the evidence. Binding Ninth Circuit precedent makes it clear that an actual detention order may be imposed using **only** a preponderance of the evidence standard and deciding otherwise would turn well-established case law on its head. Given that, there is no logical basis for requiring a heightened evidentiary standard and heightened burden of proof to a case where a judge **affirmatively authorizes release** for a defendant and makes a determination about the appropriate conditions and amount of security necessary to ensure the appearance of the defendant.

### C. These Cases Are Not Appropriate For The Extraordinary Remedy of Habeas Corpus

The US Supreme Court noted the writ of habeas corpus has historically been regarded as an extraordinary remedy. *Brecht v. Abrahamson*, 507 US 619, 633 113 S Ct 1710, 1719, 123 L Ed2d 353 (1993). The Court has also found habeas review "intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Duckworth v. Eagan*, 492 US 195, 210, 109 S Ct 2875, 2884, 106 L Ed2d 166 (1989) (O'CONNOR, J., concurring) (quoting *Harris v. Reed*, 489 U.S. 255, 282, 109 S Ct 1038, 1054, 103 L Ed2d 308 (1989). In

short, habeas is not a remedy that should be taken lightly. As noted above, each of the petitioners had at least one contested release hearing in front of a state court judge where they made successful arguments to reduce their security release amounts, with one Petitioner (Mr. Gillihan) having three hearings. Each of them also had the opportunity to file a writ of mandamus or writ of habeas with the Oregon Supreme Court. None of the Petitioners are precluded from requesting additional release hearings to further reduce their security release amounts or take into account any changes in circumstances. The court should decline to intercede in this matter as it involves a compelling state interest in protecting the public and ensuring defendants appear at trial, and there are other state remedies easily available to Petitioners – requesting another release hearing.

### D.  There is no case-in-controversy between Petitioners and Respondent for the requested relief to order "a thorough adversarial hearing."

All Petitioners request conditional writs of habeas corpus that the Court order their release unless "the Washington County court conducts a thorough adversarial hearing that complies with the requirements for preventative detention by the United States Supreme Court[.]" (Rasmussen Memo, ECF 3, p. 7; Raney Memo, ECF 2, p. 7; Mee Memo, ECF 1-2, p. 7; Villeda Memo, ECF 1-2, p. 7; Gillihan Memo, ECF 1-2, p. 7). Respondent asserts that the Washington County courts have already conducted one or more adversarial hearings regarding release, and that those provisions easily surpass state and federal constitutional requirements. In any event, the *State*, not the Respondent, would be required to conduct any additional release hearings. Respondent, an elected Sheriff, simply cannot provide that requested relief.

Respondent moves the court to join the State as a necessary party required by Fed. R. Civ. Proc. 19. *See* Rule 1(b), Rules Governing Section 2254 Cases in the United States District Courts ("**Other Cases**. The district court may apply any and all of these rules to a habeas corpus petition not covered under Rule 1(a)"); Rule 12, Rules Governing Section 2254 Cases in the

United States District Courts (Applying Federal Rules of Civil Procedure under Habeas Corpus

Rules). Without a "state officer," the requested relief cannot be granted, and the State must have

the opportunity to defend setting of bail, pretrial conduct and release defenses of Petitioners'

criminal matters.

Whether the State must be joined as a party to an action is a two-part analysis: (1)

Whether the absence of the person in question will prevent those already parties from receiving

complete relief and (2) whether the nonparty claims an interest relating to the subject of the

action and is situated such that the disposition of the action in his absence may impair his interest

or leave those already parties subject to a substantial risk of incurring multiple or inconsistent

obligations. Fed. R. Civ. Proc. 19(a)(1). If the answer to either of those questions is yes, the court

must then ask whether the party to be joined is subject to service of process and whether the

court will retain subject matter jurisdiction, post-joinder. If so, then the nonparty must be joined.

Fed. R. Civ. Proc. 19(a)(2).

As to the first prong, the absence of a state officer prevents Petitioners from receiving

complete relief – *i.e.*, release with no conditions or an additional hearing. That question is also key

to whether the proper respondent has been named. Specifically:

> "We understand *Belgarde* to require us to consider *sua sponte*, a different
> issue-whether the named respondent has power to provide the desired relief.
> The asserted defect in *Belgarde* was the failure to name, in addition to the
> immediate custodian, the state Attorney General. *See* <u>*Belgarde*, 123 F.3d at
> 1212</u>. Here, Smith's desired relief is [physical] release from state custody,
> which the petitioner's custodian *or* a superior of that custodian may grant.
> Thus, when a habeas petitioner has failed to name the proper respondent
> pursuant to <u>§ 2242</u>, we must ask *sua sponte* whether the respondent who *is*
> named has the power to order the petitioner's release. If not, the court may
> not grant effective relief, and thus should not hear the case unless the
> petitioner is amended to name a respondent who can grant the desired relief."

*Smith v. Idaho*, 392 F3d 350, 355 n3 (9th Cir 2004) (*citing Belgarde v. Montana*, 123 F3d 1210, 1212 (9th Cir 1997)). Although Smith involved a habeas writ under § 2254, the reasoning is analogous as here, complete relief may not be granted without the State.

Second, it is undisputed that the State has a concrete, real and particularized interest in defending the release hearings and orders of the State trial court, with all accompanying appeals, relating to Petitioners. The State, not Respondent, is best situated to respond to these petitions and any disposition of Petitioners' cases in the State's absence will impair and foreclose the State's interests and create a precedent that may adversely affect all state trial courts and state prosecutors. If this Court were to grant petitioner's request for a conditional release upon the condition that the State trial court hold another hearing, the Respondent would have absolutely no ability to require the State court to schedule or conduct such a hearing, as Respondent is not even a party to the underlying criminal proceedings.

Last, there is no doubt the State is subject to service of process in a federal habeas proceeding and adding the State would not affect this court's subject matter jurisdiction over these federal habeas matters. The State is a necessary and vital party to provide Petitioner's requested relief and they should be joined as a necessary party.

**E.  *Younger* Abstention Applies to Preclude Unconditional Release or Any Other Remedy.**

Abstention under *Younger v. Harris,* 401 US 37, 91 S Ct 746, 27 L Ed2d 669 (1971) is appropriate to prevent federal interference in ongoing state criminal proceedings. *Younger* abstention is a "jurisprudential doctrine rooted in overlapping principles of equity, comity and federalism." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F3d 1089, 1091-92 (9th Cir 2008). Only in "exception circumstances," such as state criminal proceedings, should abstention apply in deference to the States. *New Orleans*

*Public Service, Inc. v. Council of City of New Orleans*, 491 US 350, 367-68, 109 S Ct 2506, 105 L Ed2d 298 (1989). Petitioners will assert *Younger* Abstention is foreclosed in these proceedings by *Arevalo v. Hennessy*, 882 F3d 763 (2018), but as discussed below that case is distinguishable on both the law and the facts.

In the Ninth Circuit, *Younger* abstention is  appropriate when (1) there are ongoing state judicial proceedings, (2) the proceeding implicates important state interests, (3) adequate opportunity exists in the state proceedings to raise constitutional challenges, and (4) the requested relief seeks to enjoin or in all practicality, effectively enjoins the ongoing state judicial proceeding." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F3d 754, 758 (9th Cir 2014). The fourth element was added by the Ninth Circuit in *Gilberston v. Albright*, 381 F3d 965 (2004) and has no basis in *Younger* or subsequent Supreme Court cases, which include only the first three elements above. The first three prongs of *Younger* abstention are all easily met in this proceeding; Petitioners admit there are ongoing state judicial proceedings. Protecting the public and ensuring the appearance of defendants by requiring security release for the most serious persons crimes is enshrined in the Oregon Constitution, Article I, section 14 and 43 and ORS 135.240 and is a compelling State interest. *See Salerno*, 481 US at 749 ("The government's interest in preventing crime by arrestees is both legitimate and compelling") (quoting *De Veau v. Braisted*, 363 US 144, 155, 80 S Ct 1146, 4 L Ed2d 1109 (1960)). Petitioners utilized and may still avail themselves of the right to petition the trial court for further release hearings and may raise constitutional challenges through writs of habeas and writs of mandamus. *See State ex rel Connell v. Roth*, 258 Or 428, 435, 482 P2d 740 (1971), (addressing denial of pretrial release on writ of mandamus, instead of habeas corpus). They have chosen not to do so.

Page **26** of **34** – **RESPONDENT SHERIFF PAT GARRETT'S RESPONSE TO CONSOLIDATED PETITIONS FOR WRIT OF HABEAS CORPUS**

The last prong (the requested relief seeks to enjoin or in all practicality, effectively enjoins the ongoing state judicial proceeding) - is at the heart of the Court's analysis in *Arevalo* and should not be applied here. The requested relief for these consolidated petitions, if granted, would cause an upheaval in the entire Oregon criminal justice system, and would effectively eviscerate the security release scheme adopted by Oregon voters in Ballot Measure 11, codified in ORS chapter 135. Granting the relief sought by petitioners would fly in the face of those policies and Oregon Court decisions interpreting Oregon statutes and Oregon Constitutional provisions, such as *Sutherland*. 329 Or at 367-368 (analyzing and approving constitutionality of ORS 135.240(5)). While this relief would not necessarily stop the prosecutions of these petitioners, there is no question that, if granted, the relief requested will significantly interfere with the operation of all ongoing state criminal prosecutions.

Petitioners will argue *Arevalo* requires declining abstention. In *Arevalo*, the State of California <u>conceded</u> that Mr. Arevalo was entitled to habeas relief because he did not receive a constitutionally adequate process during the setting of his bail by the superior court. 882 F3d at 764. The appeal arose because the district court accepted the State's concession yet still decided, *sua sponte*, to exercise *Younger* abstention, backtracking on waiver of abstention. *Id*. at 765. The underlying charges related to a domestic dispute and defendant argued the financial release conditions were unconstitutional absent both specific procedural protections and a finding that non-financial conditions could not reasonably serve the State's interest. *Id*. at 764-65. He also pointed out that he had no prior criminal record and he had never failed to appear in court. He had been assigned the lowest score possible for the risk of non-appearance and committing further crimes during a period of pretrial release. Based on the State's concession and focusing on the fourth prong, the court declined to abstain.

Here, every single Petitioner is alleged to have committed one or more Measure 11 offenses, involving either physical harm to minors, encouraging such harm or engaging in domestic physical violence in the presence of a minor, and all are facing significant mandatory minimum sentences if convicted. Unlike *Arevalo*, each of the petitioners received constitutionally adequate process to set bail, and as noted above one petitioner had three separate hearings regarding his release. These petitions are orders of magnitude away from *Arevalo*, a low-level offender with no criminal history.

Respondent asserts *Arevalo* is entirely distinguishable. To the extent the court finds it binding, Respondent argues that when the relief requested would work a wholesale change on the entire security release scheme enshrined in a state constitution and statutes, that is exactly the type of interference in state proceedings at the core of *Younger* and appropriate for abstention. As the Supreme Court noted:

> *Younger v. Harris, supra*, and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*, at 44, 91 S.Ct., at 750.[10] Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights. *Id.* at 431.

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 US 423, 102 S Ct 2515, 73 L Ed2d 1216 (1982) (internal citations omitted). The State of Oregon has created a security release system that requires an individualized determination at one or more adversarial hearings where the judge hears from the defendant and considers evidence and argument from the

defendant about the appropriate release conditions. In this case, the Court should decline to interfere with the operation of this state security release system and apply *Younger* abstention.

## IV.    CONCLUSION

Based on the above, Respondent respectfully requests the court exercise *Younger* abstention and dismiss all petitions in their entirety as without merit. In the alternative, Petitioners claims are without merit and should be dismissed as improper writs of habeas. However, should the court allow Petitioners' cases to move forward, the State as a necessary party must be joined before any further proceedings.

DATED: July 2, 2020.

*s/Elmer M. Dickens*
Elmer M. Dickens, OSB No. 980484
Sr. Assistant County Counsel
*Elmer_dickens@co.washington.or.us*
Kimberly A. Stuart, OSB No. 054685
Sr. Assistant County Counsel
*Kimberly_stuart@co.washington.or.us*
Attorney for Respondent Sheriff Pat Garrett

## CERTIFICATE OF SERVICE

I certify that on July 2, 2020 I served a true and correct copy of each of the documents listed below on the following attorneys and parties by one of the following methods as designated for each recipient of service below:

| | |
|---|---|
| Mail | First class mail plainly addressed as shown and deposited, postage fully prepaid, on July 2, 2020, with the U.S. Postal Service for delivery. |
| Mail | Certified. |
| Fax | Facsimile. |
| Personal | Hand delivery directly to such person. |
| Office | Hand delivery to a clerk or person apparently in charge of such person's office. |
| Home | Hand delivery to a resident over 14 years of age at such person's residence. |
| ECF | Electronic filing with the Court. |

Persons Served:

| Name and Address | Attorney for | Service Method(s) |
|---|---|---|
| **Charles Gerstein**<br>1601 Connecticut Ave NW, Suite 800<br>Washington, DC 20009 | Petitioner | ECF |
| **Jesse A. Merrithew**<br>**Viktoria Safarian**<br>Levi Merrithew Horst PC<br>610 SW Alder St., Suite 415<br>Portland, OR 97205 | Petitioner | ECF |

Documents:

| |
|---|
| 1.  RESPONDENT SHERIFF PAT GARRETT'S RESPONSE TO CONSOLIDATED PETITIONS FOR WRIT OF HABEAS CORPUS |
| 2.  DECLARATION OF ELMER M. DICKENS |

 _s/Elmer M. Dickens_
ELMER M. DICKENS, OSB #980484
Sr. Assistant County Counsel
elmer_dickens@co.washington.or.us
Of Attorney for Respondent

20-7594